Olivia **CORNYN; Jennifer Wilson; Rhonda O'Cana; Darlene Leigh; Bernice Polansky; and Joni Polansky, Appellants,**

v.

**SPEISER, KRAUSE, MADOLE, MENDELSOHN & JACKSON; Les Mendelsohn, Individually, and Randall Jackson, Individually, and Southwest Airlines, Inc., Appellees.**

No. 04–97–00237–CV.

Court of Appeals of Texas,
San Antonio.

Feb. 11, 1998.

Rehearing Overruled March 12, 1998.

Damon R. Capps, Houston, for Appellants.

J. Joe Harris, Wells, Pinckney & McHugh, P.C., Randolph P. Tower, Gail Dalrymple, Clemens & Spencer, San Antonio, for Appellees.

Before STONE, GREEN and ANGELINI, JJ.

## OPINION

ANGELINI, Justice.

This is an appeal from the granting of summary judgment in favor of the defendants in a legal malpractice and unsafe workplace lawsuit. The appellants, Olivia Cornyn, Jennifer Wilson, Rhonda O'Cana, Darlene Leigh, Bernice Polansky and Joni Polansky, sued the law firm of Speiser, Krause, Ma-

dole, Mendelsohn & Jackson as well as attorneys Les Mendelsohn and Randall Jackson[1] for alleged legal malpractice in representing the appellants in their discrimination claims against Southwest Airlines. The appellants also sued Southwest Airlines under the Texas Health and Rehabilitation Act for failing to provide a safe workplace. In two points of error, the appellants contend that the trial court erred in granting both the Lawyers' and Southwest's motion for summary judgment. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Olivia Cornyn, Jennifer Wilson, Rhonda O'Cana, Darlene Leigh, Bernice Polansky and Joni Polansky (Appellants) worked for Southwest Airlines (Southwest) as ticketing agents in San Antonio. The appellants claim that improperly designed work stations at Southwest caused them each a variety of physical injuries, including carpal tunnel syndrome and severe facial, neck, shoulder, and back pain. The appellants contacted attorney Robert Thompson, who filed a charge of discrimination against Southwest with the Texas Commission on Human Rights (TCHR) and the Equal Employment Opportunity Commission (EEOC) on February 2, 1994. The charge alleged that the appellants had been denied reasonable accommodations which would allow them to perform the essential functions of their jobs in violation of the Americans with Disabilities Act (ADA).

On March 16, 1994, Thompson received a notice of right to sue from the EEOC, advising him of his right to file suit against Southwest within ninety days of the notice. Thompson withdrew from the case soon thereafter. The appellants then retained the law firm of Speiser, Krause, Madole, Mendelsohn & Jackson to represent them in their claims against Southwest. The Lawyers negotiated an extension of the right to sue deadline to October 11, 1994, in order to facilitate settlement negotiations with Southwest. Southwest indicated a desire to accommodate the appellants, however, settlement negotiations continued regarding the reasonableness and extent of the accommodations to be made. As settlement negotiations were continuing, October 11, 1994, passed with no suit being filed. Shortly thereafter, the appellants refused further negotiations and fired the Lawyers.

On May 26, 1995, the appellants brought the present action against the Lawyers, claiming that the Lawyers committed legal malpractice by their failure to file an ADA lawsuit in federal court on the appellants' behalf. The appellants claim that the Lawyers' actions and misrepresentations caused the appellants to lose their right to pursue their claims against Southwest. The appellants did not file a new EEOC charge, nor did they attempt to file suit against Southwest in state court under the Texas Commission on Human Rights Act (TCHRA).

On January 21, 1996, the Lawyers filed a motion for summary judgment, alleging that the appellants had not been harmed because they could still file a new charge with the EEOC based upon on-going discrimination; that they could still file suit under the TCHRA; or, in the alternative, that they were estopped from filing any type of ADA or TCHRA suit because they had elected to file for workers' compensation and long term disability benefits during settlement negotiations. The appellants responded to the Lawyers' motion by amending their petition to add Southwest as a party defendant, alleging violations of the TCHRA. On My 23, 1996, the trial court granted the Lawyers' motion for summary judgment.

Shortly thereafter, Southwest moved for summary judgment, alleging that the appellants could not maintain their TCHRA suit because they had not exhausted their administrative remedies and because they elected to claim and receive workers' compensation and disability benefits during a time they now claim they were able to work. On January 30, 1997, the trial court granted Southwest's motion for summary judgment, creating a final and appealable judgment.

1. For the sake of brevity and clarity, appellees, Speiser, Krause, Madole, Mendelsohn & Jackson, Les Mendelsohn, individually, and Randall Jackson, individually, will be collectively referred to as "the Lawyers."

## ARGUMENT AND AUTHORITY

### A. Standard of Review

Generally, in order to prevail on a motion for summary judgment, the movant must either prove that no genuine issue of material fact exists, affirmatively disprove at least one element of the plaintiff's cause of action, or prove an affirmative defense as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Ross v. Arkwright Mut. Ins. Co.*, 892 S.W.2d 119, 127 (Tex.App.—Houston [14th Dist.] 1994, no writ). The movant bears the burden of proving that he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). On review, the appellate court must take as true all evidence favoring the non-movant and indulge every reasonable inference in his favor. *Park Place Hosp. v. Milo*, 909 S.W.2d 508, 510 (Tex.1995); *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984).

The summary judgments in the present case do not specify the grounds upon which they were granted. Where a summary judgment is granted on unspecified grounds, it will be affirmed on appeal if any of the theories that were advanced by the movant are meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993); *Rogers v. Ricane Enterprises, Inc.*, 772 S.W.2d 76, 79 (Tex.1989). In this case, the Lawyers' contention that the appellants have not been harmed by their representation because the appellants can still file a discrimination claim against Southwest is in direct conflict with Southwest's claim that the appellants can not maintain a discrimination suit against Southwest because the appellants failed to exhaust all of their administrative remedies. On the other hand, both the Lawyers and Southwest claim that the appellants are estopped from bringing a discrimination claim because they have elected to seek workers' compensation and disability benefits.

While we are not limited to considering the estoppel/election of remedies ground on appeal, it is most logical to consider that ground first as it is common to both summary judgments. We, therefore, begin our review by focusing on the estoppel/election of remedies arguments advanced by both of the appellees; and, finding it meritorious, we affirm the granting of both summary judgments in this case without reaching the appellees' alternate and inconsistent arguments.

### B. Estoppel / Election of Remedies

Both the Lawyers and Southwest contend that because all of the appellants applied for workers' compensation impairment benefits and long term disability benefits, they are estopped from asserting a claim of discrimination under either the ADA or the TCHRA. Clearly, if this argument is meritorious, it serves as a complete bar to the appellants' claims against Southwest under the TCHRA and summary judgment in favor of Southwest was appropriate. In a less direct but nevertheless conclusive way, the same argument bars the appellants' claims against the Lawyers. If the appellants are estopped from maintaining a discrimination action against Southwest under either the ADA or the TCHRA, then the Lawyers acted appropriately in failing to file such an action and continuing out-of-court settlement negotiations with Southwest. In such a circumstance, the appellants suffered no damages as a result of the Lawyers' actions and summary judgment was appropriate as to the appellants' legal malpractice claims. *See Mayhew v. Town of Sunnyvale*, 774 S.W.2d 284, 287 (Tex.App.—Dallas 1989, writ denied), *cert. denied*, 498 U.S. 1087, 111 S.Ct. 963, 112 L.Ed.2d 1049 (1991) (holding defendant entitled to summary judgment if he establishes that one element of the plaintiff's cause of action does not exist).

Each appellant admits to applying for workers' compensation and long term disability benefits. In so doing, each of the appellants and their various health care providers certified that they were unable to work and that, in several circumstances, they were totally disabled. In order to maintain an action under either the ADA or the TCHRA, a plaintiff must demonstrate that she is a qualified individual with a disability. *See* 42 U.S.C. § 12111(8); TEX. LAB.CODE ANN. § 21.105 (Vernon 1996). The individual must, either with or without accommodation,

be able to perform the essential functions of the employment position desired; or, in other words, the disability must not impair the individual's ability to reasonably perform the job. *Leatherwood v. Houston Post Co.,* 59 F.3d 533 (5th Cir.1995). If the individual is unable to perform her job, even with accommodation, then the individual is not entitled to protection under the ADA or the TCHRA. *Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5th Cir.1993), *cert. denied,* 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994).

■ All six of the appellants in this case applied for and received some type of disability or impairment benefit based upon each woman's unequivocal assertion that she could no longer work. Specifically, the summary judgment evidence indicates the following assertions made by or on behalf of each appellant:

*Olivia Cornyn:* Southwest Airline records indicate that she received over $9,570 in workers' compensation impairment income benefits related to the impairments alleged in this lawsuit as of September 10, 1996. In a claim for Long Term Disability Benefits made on August 1, 1994, she indicates that "[my condition] makes me unable to do my job." She further states that she became unable to work at her occupation because of her disability on February 4, 1994, the day her EEOC complaint was made, and that she had not worked since that time. She certified that this information was true and correct. Dr. Joseph Nelson certified on a long term disability claim form that she was unable to perform her job duties on July 29, 1994, and that she became "totally disabled" on February 4, 1994.

*Darlene Leigh:* Southwest Airline records indicate that she received $2,906 in combined workers' compensation impairment income and temporary income benefits related to the impairments alleged in this lawsuit as of September 10, 1996. In a claim for Long Term Disability Benefits made in July of 1995, she indicates that she became unable to work at her occupation because of her disability on February 21, 1994, and had not worked since that time. She certified that this information

was true and correct. Dr. Joel Rustein certified on a long term disability claim form that he recommended she stop working on November 11, 1994. He stated that job modifications would need to be made before she could return to work and that her disability would impair her for an undetermined amount of time. When asked when he expected a fundamental change in her condition, the doctor stated, "never."

*Rhonda O'Cana:* Southwest Airline records indicate that she received $17,600 in workers' compensation impairment income benefits related to the impairments alleged in this lawsuit as of September 10, 1996. In a claim for Long Term Disability Benefits made on February 4, 1994, she indicates that she became unable to work at her occupation because of her disability on July 29, 1993, and had not worked since that time. She stated that sitting and working at a computer aggravates her condition. She certified that this information was true and correct.

*Bernice Polansky:* Southwest Airline records indicate that she received $4,983 in workers' compensation impairment income benefits related to the impairments alleged in this lawsuit as of September 10, 1996. She admits to having applied for Social Security Disability benefits in 1993. In a claim for Long Term Disability Benefits made on August 6, 1992, she indicates that "[my condition] makes me unable to perform duties." She further states that she became unable to work at her occupation because of her disability on February 28, 1992, and that she had not worked since that time. She certified that this information was true and correct. Dr. Wilbur Avant certified on a long term disability claim form that he recommended she stop working on May 21, 1992. While her condition is expected to improve, Dr. Avant stated that "it is impossible to determine when she will begin to show sustained improvement." Polansky's chiropractor, in a letter to Southwest Airlines on March 30, 1993, stated that she would "be off work indefinitely," and that he did not believe that her condition will ever stabilize to the point where she could return to her job.

*Jennifer Wilson:* Southwest Airline records indicate that she received over $4,872 in workers' compensation impairment income benefits related to the impairments alleged in this lawsuit as of September 10, 1996. In a claim for Long Term Disability Benefits made on May 24, 1994, she indicates that she was "unable to perform duties." She further states that her doctor advised her not to continue working at her occupation because of her disability on March 15, 1994, and that she had not worked since that time. She certified that this information was true and correct. Her doctor stated in a letter to her attorney on October 21, 1994, that "there is no sign that her symptoms will abate. . . . She will only be able to return to work if her pains diminish . . . ." He then stated, what accommodation he recommends if she does ever return to work.

*Joni Polansky:* Southwest Airline records indicate that she received $1,800 in workers' compensation impairment income benefits related to the impairments alleged in this lawsuit as of September 10, 1996. Dr. Salvador Baylor stated on October 13, 1994, in Polansky's application for family and medical leave that she was not able to perform work of any kind.

Many federal courts have held that a plaintiff is not a "qualified individual with a disability" if she has represented that she is unable to perform the essential functions of her job in order to obtain disability benefits. *See, e.g., Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir.1996) (holding that representations by plaintiff and her physician in seeking long term disability benefits that she was totally disabled from working either full or part time supported finding that she was not a qualified individual under the ADA); *Lewis v. Zilog,* 908 F.Supp. 931, 945 (N.D.Ga. 1995) (finding that where plaintiff took a medical leave of absence from work, failed to return to work, and doctor stated she was unable to work, she was estopped from claiming she was a qualified individual with a disability); *Cheatwood v. Roanoke Indus.,* 891 F.Supp. 1528, 1537–38 (N.D.Ala.1995) (holding plaintiff could not qualify as a "qualified person with a disability" when he testified at a workers' compensation trial that he

could not perform the essential functions of his job); *Garcia–Paz v. Swift Textiles, Inc.,* 873 F.Supp. 547, 555 (D.Kan.1995) (holding plaintiff was estopped from claiming she could perform essential tasks of her job where she and her physician consistently represented that she could not perform her job in seeking disability benefits).

The courts reason that a plaintiff may not, on one hand, state that she can not perform the essential functions of her job in an effort to receive disability benefits, and, on the other hand, claim damages against her employer on assertions that she *could* perform the essential functions of her job if accommodations are made. *See Harris v. Marathon Oil Co.,* 948 F.Supp. 27, 29 (W.D.Tex.1996) (finding it "impossible" for plaintiff to have been totally disabled under social security law and still able to perform the essential functions of his position under the ADA), *aff'd,* 108 F.3d 332 (5th Cir.1997); *Reigel v. Kaiser Foundation Health Plan of N.C.,* 859 F.Supp. 963, 970 (E.D.N.C.1994) (stating that plaintiff "cannot speak out of both sides of her mouth with equal vigor and credibility before this court" in holding that plaintiff could not create a cause of action under the ADA by requesting a return to work during the same time period within which she and her physicians were certifying that she was wholly unable to work).

Several federal courts have adopted this reasoning; however, Texas courts have cautioned that application for and receipt of disability benefits does not automatically foreclose ADA claims. *See Cleveland v. Policy Management Systems Corp.,* 120 F.3d 513, 517 (5th Cir.1997) (declining to adopt a per se rule); *Morton v. GTE North, Inc.,* 922 F.Supp. 1169, 1182 (N.D.Tex.1996) (rejecting strict estoppel approach), *aff 'd,* 114 F.3d 1182 (5th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 205, 139 L.Ed.2d 141 (1997); *see also Pegues v. Emerson Electric Co.,* 913 F.Supp. 976, 980–81 (N.D.Miss.1996) (stating court did not believe that a finding of disability by another entity automatically foreclosed an ADA claim). The courts in *Cleveland, Morton,* and *Pegues* held that the mere application for and receipt of disability benefits should not estop a plaintiff from main-

taining an ADA claim; rather, courts should consider the *substance* of the representations made by the plaintiffs and their agents in seeking those disability benefits. *Cleveland,* 120 F.3d at 518; *Morton,* 922 F.Supp. at 1182; *Pegues,* 913 F.Supp. at 981; *see Hatfield v. Quantum Chemical Corp.,* 920 F.Supp. 108, 111 (S.D.Tex.1996) (holding that the *representation* of total disability in a claim for disability benefits is alone enough to conclude the plaintiff was not a qualified person with a disability).

In *Cleveland,* the court noted several situations in which an individual could apply for and receive disability benefits and still not be precluded from asserting a claim under the ADA. *Cleveland,* 120 F.3d at 517–18. In order to maintain such a situation, however, the court stressed that the plaintiff must present credible evidence that, even though she may be disabled for purposes of disability, she is otherwise qualified to perform the essential functions of his job with reasonable accommodations. *Id.* at 518 (stating that such evidence could include the disability benefits application if such application indicates that the applicant *could* work with accommodations).

In *Morton,* the court held that the plaintiff's continuous, unqualified representation that her disability prevented her from doing her job outweighed her claims that she was nevertheless a qualified individual with a disability because she could have performed her job had she been reasonably accommodated. *Morton,* 922 F.Supp. at 1183. Likewise, the court in *Pegues* noted that the plaintiff's representations that she could not work in order to receive disability benefits and her representations that she could work if the defendant reasonably accommodated her were fatally inconsistent. *Pegues,* 913 F.Supp. at 981 (stating "these positions are clearly inconsistent, and regardless of the label attached to this phenomenon, their advancement is not legally proper"). These holdings indicate that an unqualified statement of disability cannot be later mitigated by statements that work could be accomplished if accommodations are made. The courts require that those mitigating statements be made at the time disability benefits

are sought, not in a subsequent legal proceeding when the individual is in danger of losing her ADA claim.

■ In the present case, each appellant clearly made an unqualified statement that she was completely unable to work sometime during the pendency of her claim with the EEOC. The only controverting evidence are affidavits filed by appellants Olivia Cornyn, Brenda Polansky, Jennifer Wilson, and Rhonda O'Cana in response to Southwest's motion for summary judgment in which each of them claim that she never stated that she could not work if reasonable accommodations were made. However, such assertions create the very inconsistency at issue and they come too late. Moreover, they do not create an evidentiary fact issue because, not only are the affidavits self-serving, their content is implied by the very assertion of an ADA claim.

■ Such assertions have been uniformly rejected in federal forums. *See Kennedy,* 90 F.3d at 1481 (stating the plaintiff's subsequent assertion that she could work if accommodations were made was self-serving and did not create a *genuine* dispute as to whether she could perform her job during the relevant time period); *Smith v. Midland Brake Inc.,* 911 F.Supp. 1351, 1358 (D.Kan. 1995) (holding that "statements on [plaintiff's] application [for disability benefits] represent unconditional assertions as to his disability, and [he] cannot now seek to qualify those statements where the application itself is unequivocal"). Further, under Texas law, such affidavits do not constitute proper summary judgment evidence. Self-serving statements regarding a witness's state of mind or her subjective beliefs are no more than conclusions and are not, therefore, competent summary judgment evidence. *Texas Division–Tranter, Inc. v. Carrozza,* 876 S.W.2d 312, 314 (Tex.1994); *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984).

We find that appellants have failed to raise a fact issue regarding whether they are qualified individuals under the ADA or the TCHRA because the summary judgment evidence reflects that they and their agents have unequivocally represented that they are unable to work and because they have pro-

vided no competent controverting evidence indicating that they could in fact work during the pendency of their claims against Southwest. Accordingly, appellants cannot maintain their TCHRA suit against Southwest. Likewise, they cannot maintain their legal malpractice suit against the Lawyers because they suffered no damage by the Lawyers' failure to file a suit that could not be maintained.

Appellants' points of error are overruled and the judgment of the trial court is affirmed.