No. 04-01-00286-CV


Bernice POLANSKY, Joni Polansky, Darlene Leigh, 

Olivia Cornyn, Nora Brandon, and Jennifer Wilson,

Appellants 


v.


SOUTHWEST AIRLINES CO., Ruth Landau, and Ginger Hardage,

Appellees


From the 225th Judicial District Court, Bexar County, Texas

Trial Court No. 97-CI-05065

Honorable David A. Berchelmann, Jr., Judge Presiding


Opinion by: Sandee Bryan Marion, Justice

 

Sitting: Phil Hardberger, Chief Justice

 Paul W. Green, Justice

 Sandee Bryan Marion, Justice


Delivered and Filed: February 13, 2002


AFFIRMED



 In this workers' compensation retaliation case, we consider whether Southwest Airlines
Company's ("Southwest") reason for terminating the employment of Bernice Polansky, Joni
Polansky, Darlene Leigh, Olivia Cornyn, and Nora Brandon was non-discriminatory as a matter of
law. We also consider whether the actions of Southwest, Ruth Landau, and Ginger Hardage were
an invasion of all the appellants' privacy. We conclude that summary judgment in favor of the
appellees was proper; therefore, we affirm.

BACKGROUND

The parties

 All the appellants are or were Southwest employees working in Southwest's San Antonio
Telephone Reservations Center. During their employment, appellants were covered by a collective
bargaining agreement between Southwest and the International Association of Machinists and
Aerospace Workers. The agreement provides that the maximum amount of time available for leaves
of absence is thirty-six months, and this rule applies to medical leaves of absence resulting from
occupational injuries as well as leaves due to other reasons. With regard to occupational injuries,
the agreement provides: "If the employee has not returned to duty by the end of the thirty-six (36)
month period, he shall be severed from employment and have all seniority rights forfeited." With
regard to other medical leaves of absence, the agreement provides: "If the employee has not returned
to duty by the end of the thirty-six (36) month period, the employee shall be severed from
employment and have all seniority rights forfeited."

 Appellants, Bernice Polansky, Joni Polansky, Darlene Leigh, Olivia Cornyn, and Nora
Brandon contended they sustained accidental bodily injuries because Southwest did not provide them
with a safe work place, i.e., they worked in a "sick building." They filed workers' compensation
claims, and it was determined they had compensable injuries. While they were on unpaid medical
leave, Southwest terminated the Polanskys, Leigh, Cornyn, and Brandon pursuant to the thirty-six
month leave policy.

 Appellant, Jennifer Wilson, is still employed by Southwest. 

 Appellees, Ruth Landau was employed as Labor Counsel by Southwest from November 1989
to July 2000, and Ginger Hardage is Southwest's Vice President of Public Relations and Corporate
Communications. 

Claims and proceedings

 In February 1994, attorney Robert Thompson filed an EEOC charge of disability
discrimination on behalf of the Polanskys, Leigh, Cornyn, and Brandon, alleging that Southwest
failed to make reasonable accommodation for claimed disabilities ranging from neck problems to
carpal tunnel syndrome. Appellants sought ergonomic modifications to their work stations.

 After Thompson withdrew, appellants retained Randall Jackson, Les Mendelsohn and the law
firm of Speiser, Krause, Madole, Mendelsohn & Jackson ("the Speiser firm") to represent them on
their EEOC charge. Eventually, the parties reached an agreement that appellants return to work. On
December 14, 1994, appellants fired their attorneys. In July 1995, appellants filed a malpractice
claim against Jackson and Mendelsohn, individually, and the Speiser firm. The appellants amended
their petition to add Southwest, alleging Southwest did not accommodate their work
station/repetitive motion disabilities. Eventually, Jackson, Mendelsohn, the Speiser firm, and
Southwest were granted summary judgment, which was affirmed by this court. See Cornyn v.
Speiser, Krause, Madole, Mendelsohn & Jackson, 966 S.W.2d 645 (Tex. App.--San Antonio 1998,
pet. denied).

 In 1995, appellants filed another round of EEOC charges against Southwest, alleging that
their place of employment was a "sick building," that their physician would not permit them to return
to work, and that Southwest discriminated against them by opposing their "sick building" workers'
compensation claims.

 Bernice Polansky and Nora Brandon filed separate suits against Southwest for wrongful
termination based on Texas Labor Code section 451.001. See Tex. Lab. Code Ann. § 451.001
(Vernon 1996). Jennifer Wilson sued Southwest, Hardage, and Landau for invasion of privacy
arising from information that appeared in a magazine article about Southwest's "sick building."
Polansky's petition was later amended to add Joni Polansky, Olivia Cornyn, and Darlene Leigh as
plaintiffs and Hardage and Landau as defendants, and to assert the addition claim of invasion of
privacy similar to that asserted by Wilson. All actions were ultimately consolidated.

 Southwest, Hardage, and Landau filed two motions for partial summary judgment: one
addressing the invasion of privacy claim and the other addressing the wrongful termination claim.
The trial court granted both motions, and this appeal ensued.

SECTION 451.001 CLAIMS

 Southwest moved for summary judgment on the retaliation claims filed by the Polanskys,
Leigh, Cornyn, and Brandon, asserting it terminated their employment for a legitimate, non-discriminatory reason: the collective bargaining agreement's policy regarding the maximum amount
of time available for leaves of absence. On appeal, appellants challenge the summary judgment on
their Section 451.001 claims on two grounds: the trial court erred in overruling their objection to
Southwest's summary judgment proof, and Southwest did not establish that the collective bargaining
agreement provision is a "uniformly company-wide applied provision to any and all company
employees who fall within its provisions."

Standard of review

 Under traditional summary judgment standards, a party moving for summary judgment has
the burden of establishing as a matter of law that no genuine issue of material fact exists as to one
or more essential elements of the plaintiff's cause of action. Casso v. Brand, 776 S.W.2d 551, 556
(Tex. 1989); Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). If the
defendant meets this burden, the plaintiff must then raise a genuine issue of material fact on that
element. Gonzalez v. City of Harlingen, 814 S.W.2d 109, 112 (Tex. App.--Corpus Christi 1991,
writ denied). In reviewing a summary judgment, an appellate court accepts as true all evidence
supporting the non-movant. Nixon, 690 S.W.2d at 549. All inferences are indulged in favor of the
non-movant, and all doubts are resolved in her favor. Id. We review rulings concerning the
exclusion of summary judgment evidence under an abuse of discretion standard. Barraza v. Eureka
Co., 25 S.W.3d 225, 228 (Tex. App.--El Paso 2000, pet. denied). 

Southwest's summary judgment proof

 Southwest submitted the affidavit of Patricia Franklin, who, at the time of her affidavit,
managed Southwest's San Antonio Reservations Center. Attached to her affidavit were the
termination letters sent to the Polanskys, Leigh, Cornyn, and Brandon. Appellants objected to her
affidavit on the grounds that it contained hearsay and failed to properly authenticate the termination
letters as business records. Appellants complained that some of the letters were signed on Franklin's
behalf or by former managers. Southwest filed a motion for consideration of Franklin's
supplemental affidavit, the trial court granted the motion, and overruled appellants' objections.

 On appeal, appellants contend the trial court abused its discretion in overruling their
objection and considering Franklin's supplemental affidavit. Appellants offer no support for their
contention that the court abused its discretion in granting Southwest's motion to supplement, other
than to suggest that Franklin's original affidavit contained substantive, and not procedural, defects.
We need not address the merits of this issue because the reason for appellants' termination, the dates
their leave of absence became effective, and the dates on which they were terminated are contained
within the affidavit of Marty Donohue, the Southwest employee responsible for attendance and leave
records at the San Antonio Reservations Center. Appellants do not object to Donohue's affidavit.

Southwest's neutral reason for termination

 The Polanskys, Leigh, Cornyn, and Brandon claim they were discharged by Southwest in
violation of the Texas Workers' Compensation Act because they filed workers' compensation
claims. The Act prohibits employers from discharging an employee merely because the employee
files a workers' compensation claim in good faith. Tex. Lab. Code Ann. § 451.001(1) (Vernon
1996). Section 451.001 is a statutory exception to the Texas common law doctrine of
employment-at-will. Burfield v. Brown, Moore & Flint, Inc., 51 F.3d 583, 589 (5th Cir. 1995); see
also Continental Coffee Prod. Co. v. Cazarez, 937 S.W.2d 444, 453 (Tex. 1996). The purpose of
the statute is to protect employees who are entitled to benefits under the workers' compensation law
and to prevent them from being discharged for taking steps to collect such benefits. Castor v.
Laredo Cmty. Coll., 963 S.W.2d 783, 785 (Tex. App.--San Antonio 1998, no pet.).

 An employee asserting a violation of Section 451.001 has the initial burden of demonstrating
a causal link between the discharge and the filing of the claim for workers' compensation benefits.
Castor, 963 S.W.2d at 785; see Tex. Lab. Code Ann. § 451.002(c) (Vernon 1996) (placing burden
of proof on employee). Although the employee can meet this burden without showing that she was
fired solely because of the filing of the worker's compensation claim, she must show that the filing
of the claim was at least a determining factor in the discharge. Castor, 963 S.W.2d at 785. This
causal connection is an element of the employee's prima facie case, and may be established by direct
or circumstantial evidence. Continental Coffee, 937 S.W.2d at 450-51.

 Southwest did not argue in its motion for summary judgment that the Polanskys, Leigh,
Cornyn, and Brandon could not discharge their initial burden of showing that a causal link existed
between their workers' compensation claims and their termination. Therefore, the trial court did not
rely on that legal theory in granting summary judgment, and we will assume that there is a fact issue
concerning whether the link exists. See McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337,
342 (Tex. 1993).

 An employer is entitled to summary judgment in a Section 451.001 retaliatory discharge
action when a legitimate, non-discriminatory reason for the discharge is established and the
employee fails to produce evidence of a retaliatory motive. See Continental Coffee, 937 S.W.2d at
451; Texas Division-Tranter, Inc. v. Carrozza, 876 S.W.2d 312, 313-14 (Tex. 1994); Castor, 963
S.W.2d at 785. The uniform enforcement of a reasonable absence-control provision, like the thirty-six month maximum leave provision here, does not constitute retaliatory discharge. Carrozza, 876
S.W.2d at 313. An employer who terminates an employee for violating such a provision cannot be
liable for retaliatory discharge as long as the rule is uniformly enforced. Continental Coffee, 937
S.W.2d at 451. 

 Southwest contended it fired the appellants because they were on leave for more than thirty-six months. The Polanskys, Leigh, Cornyn, and Brandon contend Southwest did not prove that the
thirty-six month maximum leave policy was uniformly enforced; therefore, they conclude they did
not have the burden to produce controverting evidence of a retaliatory motive. 

 As summary judgment proof, Southwest submitted the affidavit of Marty Donohue, the
Southwest employee responsible for attendance and leave records at the San Antonio Reservations
Center since 1983. Donohue stated, "During the approximately eighteen years that I have been
responsible for attendance and leave records, there has been no reservation sales agent at the San
Antonio Reservations Center who has been on medical leave absence for more than thirty-six months
whose employment has not been terminated. This is true of employees on a medical leave of
absence due to an on-the-job injuries [sic], and it is true for employees on a medical leave of absence
due to personal illness which is not job-related. In either case, the result is the same."

 Southwest's summary judgment evidence is sufficient to establish the existence of a
reasonable, uniformly-applied policy regarding leaves of absence, particularly where there is no
summary judgment evidence to the contrary. Because Southwest established a legitimate, non-discriminatory reason for the discharge, the burden shifted to appellants to establish a retaliatory
motive; a burden they did not meet. Absent controverting evidence belying Southwest's neutral
explanation, summary judgment on appellants' Section 451.001 claims was proper.

PRIVACY CLAIMS

 All appellants complained that Southwest, Landau, and Hardage invaded their privacy by
publishing private facts in two documents: a February 26, 1996 memorandum prepared by Landau
and delivered by Hardage to two reporters, and an article published in the March 28-April 3, 1996
issue of the San Antonio Medical Gazette. Appellants complain that these documents disclosed that
they had (1) filed EEOC charges and workers' compensation claims concerning alleged on-the-job
injuries and illnesses, (2) given various medical and non-medical reasons for absences, and (3)
received warnings for poor performance. Appellants' pleadings do not specify whether they are
complaining that private information about them was wrongfully publicized or that their right to be
left alone was violated. See generally Industrial Found. of the South v. Texas Indus. Accident Bd.,
540 S.W.2d 668 (Tex. 1976) (recognizing freedom from public disclosure of embarrassing private
facts); Billings v. Atkinson, 489 S.W.2d 858, 859-60 (Tex. 1973) (recognizing right to be left alone);
Mitre v. Brooks Fashion Stores, Inc., 840 S.W.2d 612, 621 (Tex. App.--Corpus Christi 1992, writ
denied) (discussing all recognized theories of recovery for invasion of privacy); Wilhite v. H.E. Butt
Co., 812 S.W.2d 1, 6 (Tex. App.--Corpus Christi 1991, no writ) (comparing various invasions of
privacy).

 In its motion for summary judgment, Southwest asserted appellants could not establish any
of the following three elements essential to recovery for public disclosure of private facts: (1)
publicity given to matters concerning their private life; (2) the publication would be highly offensive
to a reasonable person of ordinary sensibilities; and (3) the matter publicized is not of legitimate
public concern. See Industrial Found., 540 S.W.2d at 682. The heart of this privacy interest is an
individual's exclusive prerogative to determine when, under what conditions, and to what extent she
will consent to divulge her private affairs to others. Jennings v. Minco Tech. Labs, Inc., 765 S.W.2d
497, 500 (Tex. App.--Austin 1989, writ denied). 

 In their summary judgment response and on appeal, appellants contend their privacy was
violated by (1) an intentional intrusion (2) upon their seclusion, solitude, or private affairs (3) that
would be highly offensive to a reasonable person. See Valenzuela v. Aquino, 853 S.W.2d 512, 513
(Tex. 1993). Courts require that such an intrusion be unreasonable, unjustified, or unwarranted.
Billings, 489 S.W.2d at 860; Farrington v. Sysco Food Servs., Inc., 865 S.W.2d 247, 253 (Tex.
App.--Houston [1st Dist.] 1993, writ denied).

 Whether appellants' cause of action is one for publication of private facts or unwarranted
intrusion into private affairs, common to both claims is the requirement that the action taken be
"highly offensive to a reasonable person." As with the outrageousness requirement for intentional
infliction of emotional distress and the requirement in slander cases that words be capable of a
defamatory meaning, whether something is "highly offensive" is first a matter of law; a certain
threshold of offensiveness is required. Shaheen v. Motion Indus., Inc., 880 S.W.2d 88, 93 (Tex.
App.--Corpus Christi 1994, writ denied). We conclude that Southwest conclusively negated this
requirement of appellants' invasion of privacy cause of action.

 Beginning in 1995, appellants actively publicized their contention that they suffered injuries
because they worked in a "sick building." Over a period of six years, appellants held press
conferences; appeared on at least six television newscasts; picketed; distributed flyers; have been
interviewed and quoted in local and national newspapers and magazines, including Time Magazine;
filed EEOC charges; filed workers' compensation claims; sued their former attorneys for malpractice
over the alleged mishandling of their EEOC charges; sued Southwest for disability discrimination;
sued the equipment manufacturers and contractors who provided equipment services to Southwest;
and disclosed aspects of their physical, mental, and emotional ailments. Appellants do not dispute
Southwest's contention that Southwest did not initiate any publicity.

 Instead, Southwest acted in a responsive mode. In 1996, Alan Berg of the television station
WFAA contacted Hardage about a story he was going to air based on his interview with Southwest
employees, including Bernice Polansky, who claimed Southwest's "sick building" was affecting their
health. Berg called Hardage to give Southwest an opportunity to respond to the allegations. To
prepare a response, Hardage spoke to Landau about appellants' disability complaints. Because
appellants' history was so voluminous, Landau prepared a memorandum summary for Hardage in
preparation for Hardage's interview with Berg; a copy of the memorandum was given to Berg. The
memorandum did not mention the appellants by name, and Berg's story never aired. We conclude
that the non-specific summary given to Berg in response to a story that never aired would not be
highly offensive to a reasonable person.

 During the week of March 28, 1996, the San Antonio Medical Gazette published an article
entitled "Sick Building Syndrome Symptomatic vs. Psychosomatic." The article's author stated the
article was initiated by persons who claimed they worked at the Reservations Center, and that he
contacted Southwest to allow it to respond to the "sick building" allegations and complaints that the
building was causing employees to suffer numerous physical ailments and illnesses.

 Bernice Polansky and Nora Brandon were interviewed for the article. The article described
Polansky and Brandon as "patients without an illness . . . suffer[ing] from a kaleidoscope of
symptoms, from difficulty breathing to migraine headaches to forgetfulness . . . ." Polansky was
quoted as saying, "I used to be a happy person. . . . Then people started asking me what was wrong
with me. All of a sudden I began walking around with an irritable, mean look all the time." The
article stated that Polansky and Brandon "describe[d] torturing symptoms that sound like a character
plagued by a mysterious anomaly in a B-movie: 'Chest pain. Gastrointestinal pain. Shortness of
breath. My words would get all mixed up. I'd go into the kitchen to fix dinner and forget why I was
in there. I didn't want to see my kids. I couldn't stand noise. I had hair loss and rashes, and major
depression. It was like I was coming down with the flu, I'd ache all over and get chills, but it wasn't
the flu.'" The article stated that "since being fired by Southwest Airlines in 1995 (after exceeding
the 36 month maximum time allowed for being away from work due to worker's compensation
claims) they say, they still continue to experience 'reactions to certain triggers.' The women judge
their progress by 'good days' and 'bad days.'"

 A sidebar to the article stated:

 The air inside the Southwest Airlines Reservations Center made six women,
including Bernice Polansky and Nora Brandon, sick enough they had to quit work,
according to their Houston doctor, Andrew Campbell, M.D., who diagnosed the
women with Sick Building Syndrome ("SBS").


 In July 1995, armed with Campbell's diagnosis, five of the six women filed
[EEOC charges] alleging Southwest Airlines discriminated against them when the
company's worker's compensation carrier denied their claim, a decision upheld by
the Texas Workers' Compensation Commission.


 However, five of the women originally went out of work on carpal
tunnel/repetitive motion trauma claims and were out for one-and-a-half to more than
three years, according to Ginger Hardage . . . and Ruth Landau. Landau says the
women filed their first EEOC charge in February 1994, claiming discrimination on
the basis of their alleged carpal-tunnel disabilities. In January 1996, they filed a
lawsuit based on those charges. The women claimed SBS, according to Landau, only
after they did not return to work when their disability time for carpal-tunnel had
expired. . . .


 Hardage and Landau provided employment-record summaries of the women
involved in the lawsuits (without specifying by name) which shows at least two of
them had been given warnings about their poor attendance records. Some of the
reasons they claimed for not coming to work were medically related - "migraine
headaches, chronic abdominal pain, sinus problems." Others were not - "hung up at
friends house," clock stopped working, "female problems," worried sick, nerves and
"more female problems."


 Polansky and Brandon say they have no motives for making illegitimate
claims about the building, but Landau disagrees. "Things are pretty compelling if
you consider the monetary windfall these women could get," she says. After being
out as much as three years on workers' compensation for carpal-tunnel, Landau says,
the women could theoretically gain more worker's compensation benefits if they
could prove SBS, because it is unrelated to carpal-tunnel.


Only Bernice Polansky and Nora Brandon were mentioned by name in the article.

 We conclude that providing the article's author with the non-specific summary would not
be highly offensive to a reasonable person. We also conclude that Hardage's and Landau's
comments in the article would not be highly offensive to a reasonable person. The comments were
offered in response to appellants' complaints, were of a general nature, and did not attribute a
specific ailment to a specific employee. Given that the article stated, without attribution, that the
women had filed workers' compensation claims and had been fired, Landau's comment that they had
filed EEOC claims and workers' compensation claims and received warnings for poor performance
would not be highly offensive to a reasonable person. Thus, summary judgment on appellants'
invasion of privacy claims was proper. 

CONCLUSION

 We affirm the trial court's judgment.


 Sandee Bryan Marion, Justice

PUBLISH