# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## ON REHEARING
---

---
### NO. 03-14-00079-CV
---

**Texas Parks and Wildlife Department, Appellant**

**v.**

**Nancy Gallacher, Appellee**

---
#### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
#### NO. D-1-GN-12-001458, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

We withdraw our opinion and judgment dated December 31, 2014, and substitute the following opinion and judgment in their place. Appellee's motion for rehearing is dismissed as moot.

In this interlocutory appeal, Texas Parks and Wildlife Department (TPWD) challenges the district court's order denying its plea to the jurisdiction as to the suit brought by its former employee, Nancy Gallacher, alleging employment discrimination and retaliation based on disability. TPWD contends that the district court erred in denying its plea because Gallacher failed to demonstrate a prima facie case for her claims under the Texas Commission on Human Rights Act (TCHRA) and thus, had failed to show there had been a waiver of TPWD's sovereign immunity. We will reverse the district court's order and render judgment dismissing Gallacher's suit.

## BACKGROUND

In 2000, Gallacher began employment with TPWD as an administrative assistant requiring her to perform secretarial work. From 2006 to 2010, Gallacher took paid absences from work using Family and Medical Leave Act (FMLA) leave, sick leave, and sick-pool leave[1] because of her husband's declining health and later, her own. Gallacher herself was diagnosed with morbid obesity, diabetes, congestive heart failure, and chronic anemia.

Matt Wagner was Gallacher's supervisor in the Wildlife Diversity Program at TPWD from 2006 until 2009. In 2009, Gallacher was reassigned briefly to work for TPWD's Acting Director of the Wildlife Division, Ruben Cantu, who lived and worked in San Angelo but came to TPWD's Austin office three days per week. When Cantu was her supervisor, Gallacher would work on weekends to make-up for absences exceeding her available leave. At the end of 2009, Wagner became Gallacher's supervisor again after being named TPWD's Acting Deputy Director of the Wildlife Division. As a result of Wagner's promotion, Gallacher went from assisting him with a program to assisting him with division-wide responsibilities. Wagner worked Monday through Friday, 7:30 a.m. to 5:30 p.m., and refused Gallacher's request to continue using her weekend time to make up for her regular work-week absences. He informed Gallacher that because he had accepted more responsibilities with his new position, her consistent attendance at work was necessary. Gallacher's daily functions included answering telephones, keeping Wagner's calendar and updating it with him daily, directing people to appropriate office personnel, typing memos and reports, procurement ordering, taking minutes at meetings, and supporting staff whom Wagner supervised.

---

[1] Sick-pool leave is additional paid leave available under certain conditions to employees who have exhausted all available leave because of a catastrophic illness or injury. Hours in the pool are donated from other employees who do not use them for use by employees who may.

2

But in her last year of employment at TPWD Gallacher was absent frequently, often without prior notice to Wagner, depleting all her monthly leave and all her FMLA leave, plus 174 hours of sick-pool leave. During these absences, other administrative assistants at TPWD would take over performance of Gallacher's job duties.

Gallacher complains that Wagner discriminated against her during an eight-month period from April to December of 2010. In early 2010, Gallacher contends that she complained to TPWD's Human Resources Representative Errol Hardin that Wagner had allegedly made remarks about her health and attempted to contact her doctors "but they refused to talk to him." Gallacher states that Hardin met with her and Wagner to address her complaints. Toward the end of 2010, Gallacher received a draft employee evaluation from Wagner with a "Needs Improvement" rating in the categories of "Integrity/Accountability" and "Teamwork" but an overall rating of "Meets Expectations." Gallacher's draft evaluation listed two bases for the lower rating in the "Integrity/Accountability" category. The first involved an e-mail with religious subject matter that she sent from her work computer, which caused an internal-affairs investigation after a member of the public formally complained to TPWD about being forwarded a "proselytizing" e-mail created using governmental-agency resources during governmental-agency time. Wagner noted that this incident required him to speak with the complainant, issue a report, and divert his attention from important agency tasks. The second indicated basis for the lower "Integrity/Accountability" rating was Gallacher's handling of a disagreement about leave-without-pay issues in which she, according to Wagner, became upset with an employee in Human Resources. Wagner stated that this incident caused a stressful environment for all involved and required him to hold a meeting in an effort to re-establish communications. Gallacher also received a lower rating in the "Teamwork" category, with

3

Wagner citing her erratic work attendance. Wagner noted that Gallacher's unpredictable attendance had hampered progress in improving the division's efficiency. Gallacher perceived that Wagner disliked her because of her health problems, but she acknowledged that Wagner had viewed her absences to be detrimental to the division and to cause him difficulties.

Gallacher asserts that on September 10, 2010, she complained to TPWD Deputy Human Resources Director Jim Lopp about her performance evaluation and Wagner's allegedly discriminatory treatment of her and requested a transfer to another position within TPWD. Lopp testified in his deposition that he met with Wagner two weeks later to discuss the complaints Gallacher made about her evaluation and being unable to make up her time for work absences, along with her request to move to a different position within the agency. After this meeting and based on Lopp's explanation that an employee using leave under the FMLA might not always be able to provide advance notice of absences, Wagner changed the "Teamwork" rating in Gallacher's final evaluation from "Needs Improvement" to "Meets Expectations."

On November 3, 2010, Gallacher requested two months (320 hours) of sick-pool leave for open-heart surgery that she elected to have on November 16, during what she considered a "slow period of time at the office." Gallacher left blank the "Employee Certification" part of the leave-request form asking her to indicate whether she intended to return to work when released by her physician. However, Gallacher did attach to the form a certification from her surgeon Dr. Michael Mueller, noting that she would be incapacitated from November 5, 2010 until approximately January 10, 2011.[2] Wagner approved half of the paid leave time that Gallacher

---

[2] The surgeon's predicted end date for Gallacher's period of incapacity was emphasized with capital letters and double underlining as an estimate ("EST."). Gallacher admits that she was not released to work in January 2011, and as of November 2012 had still not been released to work.

4

requested, granting her 160 hours of sick-pool leave and thereby preventing her from going into leave-without-pay status. Because Gallacher was absent from work on the week before her scheduled surgery, Wagner notified her by letter of his decision to approve 160 hours of sick-pool leave. He also advised her that he would have to decide if TPWD's business needs would allow her position to remain open. On November 29, 2010, after Gallacher had exhausted all of her leave, Wagner notified Gallacher that her sick-pool leave would end on December 15 and that her employment would be terminated after December 17 due to "business necessity." He also invited her to apply for any vacant position for which she was qualified upon her release to return to work. Gallagher's position was then posted and filled.

On January 31, 2011, Gallacher filed a Charge of Discrimination with the Texas Workforce Commission Civil Rights Division and the Equal Employment Opportunity Commission (EEOC) alleging disability discrimination and retaliation.[3] She testified in her deposition that for eight months in 2010, Wagner discriminated against her based on her disability by talking to her about her absences and doctors' visits, her weight, and why she could not do certain things or take different medications. She further testified that in the same time frame, Wagner retaliated against her for making a complaint to human resources about a problem with receipt of her paycheck by downgrading one category of her performance evaluation.

The following month, Gallacher applied to the Texas Employees' Retirement System for disability retirement benefits, certifying under penalty of perjury that she was unable to hold her job, unable to hold any other position offering comparable pay, and her disabling condition was

---

[3] Gallacher's charge of discrimination also alleged age discrimination and violation of the Genetic Information Nondiscrimination Act, but these claims are not pled in her petition.

likely to be permanent. The application included a statement from Gallacher's primary care doctor, Stephen Dobberfuhl, attesting to Gallacher's various medical conditions including hypothyroidism, diabetes, anxiety disorder, morbid obesity, gout, chronic kidney disease, aortic and carotid stenosis, pulmonary hypertension, anemia, and sleep apnea. Ultimately, Dr. Dobberfuhl opined that Gallacher was "incapacitated from work." After reviewing the information in this application, ERS approved Gallacher's disability retirement benefits.

Thereafter, Gallacher filed the underlying suit against TPWD alleging disability-based claims and retaliation. TPWD challenged her suit in a plea to the jurisdiction, which the district court denied. This interlocutory appeal followed.

## DISCUSSION

TPWD asserted in its plea, as it does on appeal, that Gallacher's suit should have been dismissed for want of subject-matter jurisdiction because she failed to provide evidence supporting a prima facie case for her disability-based claims and her retaliation claim.

### *Plea to the jurisdiction and standard of review*

A plea to the jurisdiction is a dilatory plea that functions generally to defeat an action without regard to whether the plaintiff's asserted claims have merit. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). Typically, a plea to the jurisdiction challenges whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case, but a plea can also challenge whether the jurisdictional facts alleged by the plaintiff exist. *Id.* In such cases, the court can consider evidence as necessary to resolve any dispute over those facts, even if that evidence "implicates both the subject-matter jurisdiction of the court and the

6

merits of the case." *Id.* (quoting *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)).

When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts and the jurisdictional inquiry implicates the merits of the case, a trial court's review mirrors that of a traditional summary judgment motion. *See id.* We review de novo a trial court's ruling on a challenge to its subject-matter jurisdiction. *Id.* at 228. When reviewing a plea to the jurisdiction in which the pleading requirement was met and evidence was submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Id.*

### *Prima facie case under TCHRA*

A plaintiff may establish a claim of employment discrimination under the Texas Commission on Human Rights Act (TCHRA) in two ways. One method is with direct evidence of what the defendant did and said. *Id.* at 634. But because direct evidence of discriminatory motive can be hard to come by, the courts adopted a second method, the burden-shifting mechanism of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *Garcia*, 372 S.W.3d at 634. Under the *McDonnell Douglas* burden-shifting framework, the plaintiff is entitled to a presumption of discrimination if she meets an initial burden of establishing a prima facie case of discrimination. *Id.* A plaintiff must plead basic facts establishing a prima facie case, but the defendant may present evidence negating one of the facts supporting an element of her claim. *Id.* at 637. If the defendant does so, the plaintiff must submit evidence in support of those facts. *Id.* The Texas Supreme Court has stated that unless a plaintiff making an employment-

7

discrimination claim under the TCHRA can meet her burden of demonstrating a prima facie case on her claims, there is no waiver of sovereign immunity and the trial court has no jurisdiction. *Id*.

The TCHRA prohibits an employer from discharging an individual, depriving an individual of any employment opportunity, or adversely affecting the status of an employee because of disability. Tex. Lab. Code § 21.051. The TCHRA also prohibits an employer from retaliating or discriminating against a person who opposes a discriminatory practice, or makes or files a charge or complaint of discrimination. *Id*. § 21.055. Additionally, in the absence of a showing of undue hardship, the TCHRA prohibits an employer from failing or refusing to make a reasonable workplace accommodation for a known physical or mental limitation of an otherwise qualified individual with a disability who is an employment applicant or employee. *Id*. § 21.128.[4] But employers are liable only for discrimination that occurs "because of or on the basis of a physical or mental condition that *does not* impair an individual's ability to reasonably perform a job." *Id*. § 21.105 (emphasis added). Thus, whether the TCHRA applies can turn on whether an individual with a particular condition has the ability to reasonably perform a job.

***Disability claims***

Gallacher's petition pleaded two disability-based claims: (1) disability discrimination and (2) failure to accommodate her disability.[5] To establish a prima facie case of disability

---

[4] We use "employer" for convenience but note the statute applies to a "respondent" covered under chapter 21 of the Labor Code, which means a person charged in an employment-discrimination complaint filed under this chapter and may include an employer, employment agency, labor organization, or certain joint labor-management committees. Tex. Lab. Code §§ 21.002(13), .128.

[5] TPWD argues that Gallacher did not plead, or exhaust administrative remedies for, a disability-based harassment claim. To be actionable under the TCHRA, the alleged harassment must be based on the plaintiff's protected status. *See* Tex. Lab. Code § 21.051; *see also County of*

8

discrimination, Gallacher had to show that she:  (1) has a disability; (2) is qualified for the job she seeks; and (3) suffered an adverse employment decision solely because of her disability. *Texas Dep't of Family & Protective Servs. v. Howard*, 429 S.W.3d 782, 787 (Tex. App.—Dallas 2014, pet. filed) (citing *Davis v. City of Grapevine*, 188 S.W.3d 748, 757 (Tex. App.—Fort Worth 2006, pet. denied) and *Turco v. Hoechst Celanese Corp*., 101 F.3d 1090, 1092 (5th Cir. 1996)).  To establish a prima facie case of failure to accommodate her disability, Gallacher had to show that (1) she is a qualified individual with a disability, (2) the disability and its consequential limitations were known by TPWD, and (3) TPWD failed to make reasonable accommodations for such known limitations. *See Smith v. City of Austin*, No. 03-12-00295-CV, 2014 Tex. App. LEXIS 10822, at *3 (Tex. App.—Austin Sept. 30, 2014, no pet.) (mem. op.) (citing *Feist v. Louisiana, Dep't of Justice, Office of the Attorney Gen*., 730 F.3d 450, 452 (5th Cir. 2013)); *Davis*, 188 S.W.3d at 758; *see also* Tex. Lab. Code § 21.128 (requiring reasonable workplace accommodation for known physical or mental limitation of qualified individual with disability).

Only the element of "qualification," common to both of Gallacher's disability-based claims, is at issue here.  TPWD contends that Gallacher failed to show that the TCHRA applied to

*Travis ex rel. Hamilton v. Manion*, No. 03-11-00533-CV, 2012 Tex. App. LEXIS 4004, at *18-20 (Tex. App.—Austin May 17, 2012, no pet.) (mem. op.) (noting that although plaintiff's charge of discrimination referred to "discriminatory treatment," "hostile actions," "hostile treatment," "hostile activity," and "harassment," charge contained no suggestion that such "hostile treatment" or "harassment" was based on any protected class and thus contained no allegations that would serve to put defendant on notice of plaintiff's gender-discrimination claim).  Here, the only reference to harassment in Gallacher's petition is not linked to any protected class:  "Plaintiff was not transferred to another position and the harassment and discriminatory treatment by Wagner continued." Similarly, Gallacher's charge of discrimination alleges "harassment" from Wagner, but makes no link to disability.  We are not persuaded that these general references constituted fair notice of, or administrative exhaustion for, a disability-based harassment claim against TPWD.

her disability claims because she did not show that she is a "qualified individual with a disability." Specifically, TPWD notes that Gallacher attested to her inability to perform her job or comparable work in her application for disability-retirement benefits.

A person who applies for and receives disability benefits is not precluded from maintaining a disability-discrimination claim if she presents credible evidence that she is otherwise qualified to perform the functions of her job with reasonable accommodations. *Cornyn v. Speiser, Krause, Madole, Mendelsohn & Jackson*, 966 S.W.2d 645, 651 (Tex. App.—San Antonio 1998, pet. denied). However, unqualified statements of disability cannot be mitigated by subsequent statements that work could be accomplished with accommodations. *Id*. Courts require such mitigating statements to be made when disability benefits are sought, not in a subsequent legal proceeding when a plaintiff is in danger of losing her disability discrimination claim. *See id*.

Here, in her ERS application for disability retirement (salary replacement) benefits, Gallacher swore or affirmed under penalty of perjury that:

- her disabling condition was likely to be permanent,

- she was mentally or physically incapacitated for the further performance of duty, unable to hold the position occupied and unable to hold any other position offering comparable pay,

- her condition made her unable to perform her duties even with a reasonable accommodation,

- she would need continued life-long care, and

- she was disabled from any and all gainful employment including sedentary and less stressful employment and concerned that her disabilities along with her age would put her at a disadvantage for employment.

10

Gallacher's assertion of total disability received support from her primary care physician, Dr. Dobberfuhl, who certified to ERS that:

- Gallacher's condition was likely to be permanently incapacitating with respect to her state of employment,

- Gallacher's condition was likely to be permanently incapacitating with respect to other occupations,

- his opinion about Gallacher's capacity to work was not based solely on Gallacher's opinions regarding disability but rather on her six-year history as his patient and her declining function, and

- Gallacher continued to have multiple debilitating medical problems causing her to become incapacitated from work.

Gallacher does not dispute this evidence. She relies on her deposition testimony that she could have "gotten back on track" and fulfilled her job responsibilities if she had not been let go, and she points to part of a sentence from Dr. Dobberfuhl's deposition surmising that she probably could perform some secretarial positions. However, these statements were disclosed in a subsequent legal proceeding when Gallacher's disability-discrimination claim was at risk. They do not mitigate the unqualified statements in the application presented to ERS wherein Gallacher affirmed her permanently incapacitating disability, her inability to hold the position she occupied or any other comparable position, and her inability to perform her duties even with a reasonable accommodation. *See id.* Further, the statements in the application from Dr. Dobberfuhl certifying to the "permanently incapacitating" nature of Gallacher's disability were made near the time in January 2011 when Gallacher now alleges she could have returned to work. It is undisputed that Gallacher was unable to return to work at that time and had not been released to return to work almost two years later.

11

On this record, Gallacher did not meet her burden of demonstrating a material fact issue as to whether she could perform the essential functions of her job, even with reasonable accommodations. As such, she was not a "qualified individual with a disability." Because Gallacher did not show that she was a "qualified individual with a disability," she did not establish a prima facie case for her disability-based claims under the TCHRA, and there is no waiver of sovereign immunity for those claims against TPWD. TPWD's plea to the jurisdiction should have been granted on this ground. TPWD's issue as to Gallacher's disability-based claims is sustained.

***Retaliation claim***

TPWD further contends that Gallacher did not provide evidence supporting a prima facie case for her retaliation claim. To establish a prima facie case of retaliation under the TCHRA, an employee must show that she: (1) engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse action. *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004)). Here, the parties join issue as to the last element, causation. In evaluating the "causal link" element of a retaliation claim, courts consider: (1) the extent of the employee's disciplinary record; (2) whether the employer followed its policies and procedures in dismissing the employee; and (3) the temporal relationship between the protected action and the termination. *Bacon v. EDS*, 219 F. App'x 355, 357 (5th Cir. 2007).

Gallacher contends that she established a causal link for her retaliation claim by pointing to (1) Wagner's decision to grant her 160 hours instead of 320 hours of sick-pool leave, which she contends was not authorized by TPWD's policies and procedures, before her employment

12

was terminated and (2) the time frame between her termination of employment and her complaint to Jim Lopp about Wagner's treatment of her. We disagree.

Wagner's decision to grant Gallacher 160 hours of sick-pool leave, instead of the 320 she had requested, was not prohibited by TPWD's policies and procedures. TPWD's Leave Practices Policy states that employees must obtain their supervisors' approval before taking planned absences and that supervisors retain discretion as to their approval of an employee's requested leave:

- All employees are required to coordinate and receive prior approval from their supervisors for planned absences.

. . . .

- Approval of leave is not automatic. While every attempt will be made to approve employees' timely leave requests, supervisors have authority and responsibility to use their discretion to ensure that adequate staff remains on duty to perform the work of the Division program.

Further, just because the Policy provides that a sick-leave-pool request presented to a supervisor is also coordinated with the sick-leave-pool administrator, who can approve or deny the request, does not mean that a supervisor is not authorized to approve it in part. *See Ikossi-Anastasiou v. Board of Supervisors of La. State Univ.*, 579 F.3d 546, 550 (5th Cir. 2009) (rejecting argument that department chair lacked power to "decide upon" professor's request for leave where policy manual stated that vice chancellor/vice provost had authority to grant leave). Thus, Gallacher did not establish the causation element of her retaliation claim by showing that TPWD departed from its policies and procedures.

The only remaining basis for Gallacher's causation argument is the time frame between her complaint to Lopp about Wagner and the termination of her employment. Gallacher

13

contends that the relevant time is the period between "the date that Wagner was actually made aware of Gallacher's complaint and the date on which he decided to terminate Gallacher."

The record reflects that the time between these two events was about two months and one week. The evaluation date listed on Gallacher's performance-evaluation form is September 10, 2010. Gallacher and her daughter averred that they went directly to meet with Lopp on September 10, 2010, after Gallacher's evaluation.[6] Lopp testified that he met with Wagner to discuss Gallacher's issues within two weeks of his meeting with Gallacher and her daughter, i.e., by September 24, 2010. On November 29, 2010, after Gallacher had exhausted all of her leave, Wagner notified Gallacher that her sick-pool leave would end on December 15 and that her employment would be terminated after December 17 due to "business necessity."

When, as here, "mere temporal proximity" between an employer's knowledge of protected activity and an adverse employment action is accepted as sufficient evidence of causation to establish a prima facie case of retaliation, the temporal proximity must be "very close." *Amsel v. Texas Water Dev. Bd.*, 464 Fed. Appx. 395, 402 n.8 (5th Cir. 2012) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). The relevant time frame for what is considered "very close" varies, but in circumstances similar to this case, the Fifth Circuit concluded that a gap of about two months and one week between the protected activity and the adverse action was insufficient by itself to infer a causal link. *See id*. at 401-02 (noting that retaliatory animus was not supported by employer's award of additional hours of sick-pool leave and emergency leave to its employee after

---

[6] Although Lopp believed that this meeting occurred on September 23 or September 28, 2010, we take as true Gallacher's evidence, supported by this record, that the meeting occurred on September 10, 2010. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

14

his FMLA leave was exhausted). Likewise here, we conclude that Gallacher's "mere temporal proximity" argument is insufficient to show a causal link existed between protected activity she engaged in and an adverse employment action against her. As such, she has not established a prima facie case of retaliation under the TCHRA, and TPWD's plea should have been granted on this ground. TPWD's issue as to Gallacher's retaliation claim is sustained.

## CONCLUSION

We conclude that Gallacher did not present evidence supporting a prima facie case under the TCHRA for her disability-based claims and her retaliation claim, and as a result, TPWD's sovereign immunity from suit was not waived. Accordingly, we reverse the district court's order denying TPWD's plea to the jurisdiction and render judgment dismissing Gallacher's suit.

_____

Jeff Rose, Justice

Before Chief Justice Rose and Justice Goodwin;
   Former Chief Justice Jones not participating

Reversed and Rendered on Rehearing

Filed: March 4, 2015

15