Susan Lorraine THOMANN, Appellant,

v.

LAKES REGIONAL MHMR CENTER, Appellee.

No. 05–04–00203–CV.

Court of Appeals of Texas, Dallas.

April 18, 2005.

John E. Wall, Jr., Jennifer Scherf, Law Offices of John E. Wall, Jr., Dallas, for appellant.

Joel E. Geary, Brown McCarroll, L.L.P., Dallas, for appellee.

Before Justices WRIGHT, FITZGERALD and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

Susan Lorraine Thomann appeals the summary judgment granted in favor of Lakes Regional MHMR Center (Lakes Regional) dismissing her claims of employment discrimination and retaliation. We affirm.

### BACKGROUND

Lakes Regional provides professional medical and psychological assistance to citizens with ongoing problems caused by mental illness, developmental delays, mental retardation or substance abuse. It operates two group homes in Terrell, Texas referred to as the Ninth Street home and the Park Street home. These group homes offer permanent living facilities for individuals who are not physically or mentally capable of living by themselves. The homes are staffed by employees called house parents. Among the job requirements for house parents is the ability to lift a minimum of 44 pounds. House parents are hired as "flexible staff" because they may be required to cover shifts and locations other than their regular assignments in emergency situations.

The Ninth Street home houses females who, for the most part, are not ambulatory

and need assistance in the daily activities of living, such as bathing, dressing, and eating. The Park Street home houses males, all of whom have at least one severe mental illness or physical limitation, and are more ambulatory than the females at the Ninth Street home.

In December 1998, Lakes Regional hired Thomann as a house parent and assigned her to the day shift at the Ninth Street home.[1] In June 1999, Thomann underwent a total left knee replacement[2] and returned to her regular job and duties at the Ninth Street home in September of that year. In September 2000, Thomann underwent back surgery for degenerative disc disease. Three months later, Thomann was ready to return to work but told her supervisor that she was no longer physically able to work the day shift at the Ninth Street home because of her limited ability to lift, bend and turn. Thomann traded positions with a worker at the Park Street home and returned to work in December 2000 on the night shift at the Park Street home. Her doctor's return to work capacity report restricted her to "light duty" and stated she could not lift over twenty pounds or lift patients. Upon reading the doctor's release, Kim Doyal, residential director of Lakes Regional, told Thomann that Lakes Regional did not have any "light duty" positions. But Thomann continued to work the night shift at the Park Street home where the patients were ambulatory and her lifting requirements were minimal.

In October 2001, Doyal asked Thomann for a full-duty work release from her doctor. This request sparked a dispute between Doyal and Thomann culminating in a functional capacity assessment (FCA) that was conducted in January 2002 to determine whether Thomann had any physical limitations that would prevent her from obtaining a full-duty medical release. Following the FCA, Thomann's doctor released her to "light work per Functional Capacity Assessment," which restricted her to lifting and carrying no more than twenty pounds at a time. Meanwhile, in December 2001, Thomann made an internal complaint to the Lakes Regional human resources department against Doyal alleging that Doyal was discriminating against her based on her disability because, in November, Doyal had asked Thomann to cover a position at the Ninth Street home.[3]

On February 14, 2002, Thomann met with several officers of Lakes Regional who informed her that she could not continue to work in the house parent position because of her lifting restrictions but offered her an opportunity to apply for a position as a receptionist. She rejected the offer. Lakes Regional's executive director also called Thomann and, without requiring her to apply for it, offered her the

1. Actually, Lakes Regional's predecessor hired Thomann. The entity referred to as Lakes Regional came into existence in December 1999. For clarity purposes, we refer to the entity as Lakes Regional.

2. This was Thomann's second left knee replacement surgery; the first occurred prior to her employment with Lakes Regional.

3. It is unclear from the record whether Doyal asked Thomann to temporarily cover a position at the Ninth Street home or was transferring her to that home permanently. Thomann characterizes her complaint as one of discrimination because of her disability. The complaint actually stated that Thomann's position on the night shift at the Park Street home was a permanent transfer to accommodate her physical limitations and requested an investigation into Doyal's assertion that it was only a temporary accommodation for her back surgery and was never intended to be permanent. Thomann conceded in her deposition that no one ever told her the position at the Park Street home was permanent.

receptionist position. He confirmed the offer in writing, stating the receptionist position was at the same grade level as her job as house parent and would be a lateral move. The letter advised Thomann that the position would be held open for a week. After receiving no response to the letter by the end of that week, Lakes Regional terminated Thomann's employment.

The next month Thomann filed a charge of discrimination with the Texas Commission on Human Rights (TCHR) and the Equal Employment Opportunity Commission (EEOC) alleging that Lakes Regional terminated her employment because she was disabled and because she complained to Lakes Regional about its treatment of her. The TCHR dismissed Thomann's claim stating "further investigation will not result in a Cause Finding." The EEOC concluded that "evidence obtained during the investigation does not establish a violation of the statute." Thomann then filed this lawsuit in district court alleging Lakes Regional violated sections 21.051 and 21.055 of the Texas Labor Code by terminating her employment based on her disability and retaliating against her because she made an internal complaint. Lakes Regional filed a motion for traditional and no-evidence summary judgment on both claims, which the trial court granted. Thomann's motion for reconsideration was overruled.

Thomann raises four issues on appeal. In her first, second and fourth issues, Thomann argues the trial court erred in granting Lakes Regional's motion for summary judgment because there are genuine issues of material fact regarding her claims for discrimination and retaliation and the trial court erred because it considered the summary judgment evidence in the light most favorable to the movant as opposed to the non-movant. In her third issue, Thomann argues the trial court erred in overruling her objections to the affidavits in support of Lakes Regional's summary judgment. Thomann argues all four issues together. We consider her third issue first.

## TRIAL COURT'S RULINGS ON SUMMARY JUDGMENT EVIDENCE

In Thomann's third issue, she argues the trial court erred in overruling her objections to Lakes Regional's summary judgment evidence. She argues that "all of the [a]ffidavits contained hearsay information and none of them demonstrated a basis for personal knowledge...." She also argues the claims made in the affidavits contradict Lakes Regional's letter of termination and contained conclusory assertions. But Thomann fails to identify the objectionable portions of the affidavits, she does not identify the statements in the affidavits which she complains contained hearsay or which affidavits are not based on personal knowledge, and she fails to identify which affidavit contradicts the letter of termination or why this makes the affidavit objectionable. A general directive to review affidavits for hearsay and impermissible conclusions is not sufficient to direct our attention to the error about which Thomann complains. *See* TEX. R.APP. P. 38.1(h); *see also Most Worshipful Prince Hall Grand Lodge v. Jackson*, 732 S.W.2d 407, 412 (Tex.App.-Dallas 1987, writ ref'd n.r.e.); *Ferguson v. DRG/Colony N., Ltd.*, 764 S.W.2d 874, 887 (Tex.App.-Austin 1989, writ denied). We decide Thomann's third issue against her.

We now turn to Thomann's first, second, and fourth issues.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

We review a grant of summary judgment de novo. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex.App.-

Dallas 2000, pet. denied). The standard of review in traditional summary judgment cases is well established. The issue on appeal is whether the movant met its summary judgment burden by establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *S.W. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002). The movant bears the burden of proof and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). All evidence and any reasonable inferences must be viewed in the light most favorable to the non-movant. *Nixon*, 690 S.W.2d at 548–49. Evidence favoring the movant's position will not be considered unless it is not controverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). A defendant is entitled to summary judgment if it conclusively negates an essential element of the plaintiff's case or conclusively establishes all necessary elements of an affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995).

■ In a no-evidence summary judgment, a party moves for summary judgment on the ground that there is no evidence of one or more essential elements of a claim on which the adverse party has the burden of proof. Tex.R. Civ. P. 166a(i). The burden then shifts to the non-movant to produce summary judgment evidence raising a genuine issue of material fact. Tex.R. Civ. P. 166a(i); *Hartis v. Mason & Hanger Corp.*, 7 S.W.3d 700, 702 (Tex. App.-Amarillo 1999, no pet.).

■ We review a no-evidence summary judgment under the same standard as a directed verdict. *King Ranch v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). Accordingly, we examine the record in the light most favorable to the non-movant and disregard all contrary evidence and inferences. *Id.; Wal–Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex.2002). If the non-movant produces more than a scintilla of probative evidence to raise a genuine issue of material fact, then summary judgment is improper. Tex.R. Civ. P. 166a(i); *Wal–Mart*, 92 S.W.3d at 506. A party produces less than a scintilla of evidence when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *King Ranch*, 118 S.W.3d at 751 (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983)). A party produces more than a scintilla of evidence if the evidence allows reasonable and fair-minded people to differ in their conclusions. *Id.* (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997)).

## DISCRIMINATION CLAIM

■ Section 21.051 of the labor code prohibits an employer from discriminating against an employee with respect to compensation, or the terms, conditions or privileges of employment because of race, color, disability, religion, sex, national origin or age. Tex. Lab.Code Ann. § 21.051 (Vernon 1996); *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex.1991); *Williams v. Vought*, 68 S.W.3d 102, 107 (Tex.App.-Dallas 2001, no pet.). One purpose of chapter 21 of the labor code is to "provide for the execution of the policies embodied in Title I of the Americans with Disabilities Act of 1990 and its subsequent amendments (42 U.S.C. Section 12101 et seq.)."[4] Tex. Lab.Code Ann. § 21.001(3)

4. In 1993, the legislature codified portions of the Commission on Human Rights Act into the labor code and transferred the remainder to the government code. *See* Act of May 12,

(Vernon 1996). And in 1993, the legislature incorporated the ADA definition of the term "disability" into chapter 21. *Little v. Texas Dep't of Criminal Justice*, 148 S.W.3d 374, 381–82 (Tex.2004). Accordingly, we are guided by federal law in construing chapter 21. *Id.; Haggar Apparel Co. v. Leal*, 154 S.W.3d 98, 100 (Tex. 2004); *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex.1999).

 To prove a violation of section 21.051 on the basis of disability, an employee must show (1) she is disabled, (2) she suffered adverse employment action, and (3) non-protected employees were not treated similarly. *See Azubuike v. Fiesta Mart, Inc.*, 970 S.W.2d 60, 64 (Tex.App.-Houston [14th Dist.] 1998, no pet.); *Shear Cuts, Inc. v. Littlejohn*, 141 S.W.3d 264, 269–70 (Tex.App.-Fort Worth 2004, no pet.); *Greathouse v. Alvin Indep. School District*, 17 S.W.3d 419, 423 (Tex.App.-Houston [1st Dist.] 2000, no pet.).

### *Definition of Disability*

A "disability" is (1) a mental or physical impairment that substantially limits at least one major life activity of that individual, (2) a record of such impairment, or (3) being regarded as having such an impairment. TEX. LAB.CODE ANN. § 21.002(6) (Vernon 1996); *see Kiser v. Original, Inc.*, 32 S.W.3d 449, 452 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

### Actual Disability

 The EEOC has issued detailed regulations regarding the definition of "disability" under the ADA. *Little*, 148

S.W.3d at 383. The term "physical impairment" includes:

[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin and endocrine.

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 479–80, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). The term "substantially limits" means, among other things:

[u]nable to perform a major life activity that the average person in the general population can perform; or [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*Id.; Little*, 148 S.W.3d at 383 (citing 29 C.F.R. § 1630.2(j)). Federal and Texas courts have interpreted "substantially limits" as "a demanding standard for qualifying as disabled." *Toyota Motor Manuf., Ky., Inc. v. Williams*, 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); *see Chevron Corp. v. Redmon*, 745 S.W.2d 314, 318 (Tex.1987) (the disability must severely limit performance of work-related functions in general). The factors to be considered in determining whether an individual is substantially limited in a major life activity include:

1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 987, 991–1004. *Little v. Texas Dep't of Criminal Justice*, 148 S.W.3d 374, 377 (Tex.2004). The revisor's note indicated that the short title, "the Commission on Human Rights Act," was omitted from the new statute as unnecessary. *Id.* Additionally, "the Commission on Human Rights was recently

abolished and its powers and duties were transferred to the newly-created Civil Rights Division of the Texas Workforce Commission. *See* Act of May 30, 2003, 78th Leg., R.S., ch. 302, 2003 Tex. Gen. Laws 1279." *Id.* This enactment became effective on March 1, 2004. *Id.* Accordingly, we will not refer to chapter 21 of the labor code as the TCHRA.

The nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

*Little,* 148 S.W.3d at 383. Finally, the term "major life activities" means:

"functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."

*Id.* (quoting 29 C.F.R. § 1630.2(i)).

■■■ Thomann must prove a substantial limitation with specific evidence that her particular impairment substantially limits her particular major life activity. *Waldrip v. General Elec. Co.,* 325 F.3d 652, 656 (5th Cir.2003) (plaintiff must show that his impairment has actually and substantially limited the major life activity on which he relies). Courts have held that when an employee complains that a disability prevents her from the major life activity of working, the inquiry is whether she has shown an inability to work in a broad range of jobs, not just a specific job. *Toyota Motor Mfg.,* 534 U.S. at 200, 122 S.Ct. 681; *Sutton,* 527 U.S. at 492, 119 S.Ct. 2139; *Leal,* 154 S.W.3d at 100. She must prove her impairment severely restricts or forecloses her ability to work in general; it is not enough that she cannot perform a single or particular job or narrow range of jobs. *Leal,* 154 S.W.3d at 100; *Hartis,* 7 S.W.3d at 703.

### Record of Disability

■■■ To prove a record of disability claim, Thomann must show she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." *Kiser,* 32 S.W.3d at 453 (quoting *Deppe v. United Airlines,* 217 F.3d 1262, 1267 (9th Cir.2000)); *Union*

*Carbide v. Mayfield,* 66 S.W.3d 354, 367 (Tex. App–Corpus Christi 2001, pet. denied). The types of records contemplated under the analogous provision of the ADA to establish a record of disability include educational, medical, or employment records. *Morrison v. Pinkerton, Inc.,* 7 S.W.3d 851, 857 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (citing 29 C.F.R. Pt. 1630, app. § 1630.2(k)).

### Regarded as Disabled

■■■ To prove her employer regarded her as having a substantially limiting impairment, Thomann must show (1) the employer believed she has a physical impairment that substantially limits a major life activity when in fact she does not, or (2) the employer believed she has a substantially limiting impairment which in fact is not so limiting. *Kiser,* 32 S.W.3d at 453. Additionally, she must prove that the employer regarded her as significantly restricted in the ability to perform a class or a broad range of jobs. *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1121 (5th Cir.1998).

■■■ Discrimination under any of these definitions of disability applies only to discrimination because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job. TEX. LAB.CODE ANN. § 21.105 (Vernon 1996). An employee may show she can reasonably perform a job by showing that she can perform all the essential job functions with or without reasonable modifications or accommodations by the employer. *Cornyn v. Speiser, Krause, Madole, Mendelsohn & Jackson,* 966 S.W.2d 645, 648–49 (Tex.App.-San Antonio 1998, pet. denied); *Pena v. Houston Lighting & Power Co.,* 978 F.Supp. 694, 697 (S.D.Tex.1997), *aff'd* 154 F.3d 267 (5th Cir.1998). If she cannot perform the job, with or without reasonable accommodation,

the individual is not entitled to protection under chapter 21 of the labor code. *Cornyn*, 966 S.W.2d at 648–49; *Chandler v. City of Dallas*, 2 F.3d 1385, 1395 (5th Cir.1993), *cert. denied*, 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994).

### Discussion

Thomann contends that Lakes Regional terminated her employment because she has a disability. To survive summary judgment, Thomann was required to produce more than a scintilla of evidence that she has a disability as defined by chapter 21 of the labor code. Thomann argues that she satisfies all three definitions of disability.

### Actual Disability

Thomann first argues that her inability to lift more than twenty pounds makes her disabled. But many courts have held that a lifting restriction alone does not rise to the level of a protected disability. *See, e.g., Sherrod*, 132 F.3d at 1120; *Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir.1996); *Richards v. Seariver Maritime Financial Holdings, Inc.*, 59 F.Supp.2d 616, 627–28 (S.D.Tex.1998), *aff'd* 189 F.3d 467 (5th Cir.1999); *but see Primeaux v. Conoco, Inc.*, 961 S.W.2d 401, 405 (Tex.App.-Houston [1st Dist.] 1997, no writ) (holding that plaintiff raised fact question whether lifting restriction substantially limited at least the major life activity of working).

Thomann offered no evidence that her lifting restriction substantially limited her from engaging in any of the activities of daily living. She admitted that her lifting restriction does not substantially limit her ability to care for herself, perform manual tasks, walk, see, hear, speak, breathe, learn, or work. And the lifting restriction does not prevent her from all lifting, only heavy lifting. Thomann offered no evidence that her lifting restriction substan-

tially limits her ability to use public facilities, use common carriers, obtain housing, cross the street, achieve independence, become gainfully employed, or participate in the social or economic life of the state without the protections of chapter 21. *See Chevron*, 745 S.W.2d at 317 (interpreting the predecessor to chapter 21).

Thomann offered no evidence of other jobs utilizing similar training, knowledge, skills or abilities within her geographical area from which she is disqualified. *See Primeaux*, 961 S.W.2d at 406 (a factor to consider under ADA regulations in determining whether an employee is substantially limited in the major life activity of working). Additionally, Thomann offered no evidence that she is disqualified from a broad range of jobs because of her lifting restriction. *Id.*

We conclude Thomann failed to produce more than a scintilla of evidence that she has an impairment that substantially limits a major life activity.

### Record of Disability

Next, Thomann argues she has a record of disability because Lakes Regional was aware of the limitations with her knee and back and accommodated these limitations by transferring her to the night shift at the Park Street home. Although Thomann stated in response to Lakes Regional's motion for summary judgment that she had recurring knee problems, she did not argue in the trial court that her knee problems were a source of impairment. She cannot argue this point for the first time on appeal. *See* Tex.R.App. P. 33.1(a). Accordingly, we limit our consideration to whether Thomann has a record of disability based on her back problem.

Lakes Regional established that its records concerning Thomann showed a lifting restriction which we have concluded is not

a disability. Instead, and viewed in the light most favorable to Thomann, the evidence showed that Thomann experienced back pain prior to her surgery which prevented her from performing some of the functions of the job as house parent and that she is restricted in the weight she can lift, push and pull. It also shows that Lakes Regional transferred her to another position to accommodate these limitations. But this evidence does not demonstrate a record of an impairment that substantially limits a major life activity. Thomann offered no other medical or employment records to support her claim that she had a record of disability.

We conclude Thomann failed to produce more than a scintilla of evidence of a record of disability.

**Regarded as Disabled**

■ Finally, Thomann argues that Lakes Regional regarded her as disabled because its employees knew of her restrictions and accommodated her by transferring her to the night shift at the Park Street home. The primary evidence Thomann offers to support this argument is Doyal's statement that Thomann "is not capable of performing the essential functions of her position." But this statement does not support the conclusion that Lakes Regional regarded Thomann as having an impairment that substantially limits a major life activity. It merely supports the conclusion that Thomann was unable to perform her job as house parent because of the lifting restriction.

The fact that Lakes Regional offered Thomann a different job shows that Lakes Regional believed she was qualified for other positions and that Lakes Regional did not regard her as disabled. *See Sherrod*, 132 F.3d at 1121. We conclude Thomann failed to produce more than a scintilla of evidence that Lakes Regional regarded her as disabled.

Because Thomann failed to produce evidence sufficient to raise a fact issue on the issue of disability as defined by chapter 21 of the labor code, summary judgment on Thomann's discrimination claim was proper.

## RETALIATION CLAIM

■ Section 21.055 prohibits an employer from retaliating or discriminating against an employee who opposes a discriminatory practice; makes or files a charge; files a complaint; or testifies, assists, or participates in any manner in an investigation, proceeding, or hearing. TEX. LAB.CODE ANN. § 21.055 (Vernon 1996). To establish a prima facie case of retaliation, an employee must show (1) she engaged in protected activity, (2) her employer took adverse employment action against her, and (3) the employer took this action due to her engagement in the protected activity. *See Higgs v. Trammell Crow Co.*, No. 05–04–00547–CV, 2005 WL 317791 (Tex. App.-Dallas Feb.10, 2005, no pet. h.); *Jones v. Jefferson County*, 15 S.W.3d 206, 210 (Tex.App.-Texarkana 2000, pet. denied); *Cox & Smith, Inc. v. Cook*, 974 S.W.2d 217, 223–24 (Tex.App.-San Antonio 1998, pet. denied); *Mayberry v. Texas Dep't of Agric.*, 948 S.W.2d 312, 315 (Tex. App.-Austin 1997, writ denied).

■ To prove a causal connection between her filing the complaint and the termination of her employment, Thomann must show that "but for" filing the complaint, her employment would not have been terminated when it was. *Wal–Mart Stores, Inc. v. Lane*, 31 S.W.3d 282, 295 (Tex.App.-Corpus Christi 2000, pet. denied); *McMillon v. Texas Dep't of Ins.*, 963 S.W.2d 935, 940 (Tex.App.-Austin 1998, no pet.). But she need not establish that filing the complaint was the only reason her employment was terminated. *See*

*Texas Dep't of Human Servs. v. Hinds,* 904 S.W.2d 629, 636 (Tex.1995); *Gorges Foodservice v. Huerta,* 964 S.W.2d 656, 667 (Tex.App.-Corpus Christi 1997, no pet.).

■■■ We review cases filed under chapter 21 of the labor code that have not been tried on the merits using the burden-shifting analysis in *McDonnell Douglas.* *See Machinchick v. PB Power, Inc.,* 398 F.3d 345, 356 (5th Cir.2005); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Wal–Mart Stores, Inc. v. Canchola,* 121 S.W.3d 735, 739 (Tex.2003). If Thomann can establish a prima facie case of retaliation, the burden then shifts to Lakes Regional to produce evidence establishing a legitimate, non-discriminatory reason for the termination of Thomann's employment. *Sherrod,* 132 F.3d at 1122; *see Canchola,* 121 S.W.3d at 739. If Lakes Regional produces a legitimate reason for the termination of Thomann's employment, then Thomann must produce sufficient evidence that would permit a reasonable trier of fact to find that Lakes Regional's proffered reason is a pretext for retaliation. *See Sherrod,* 132 F.3d at 1122. And even though the burden of production shifts, the burden of persuasion remains continuously with Thomann. *McDonnell Douglas,* 411 U.S. at 803, 93 S.Ct. 1817; *Farrington v. Sysco Food Services, Inc.,* 865 S.W.2d 247, 251 (Tex.App.-Houston 1st Dist.1993, writ denied). Subjective beliefs of discrimination alone are insufficient to establish a prima facie case. *Montgomery v. Trinity I.S.D.,* 809 F.2d 1058, 1061 (5th Cir.1987); *Hornsby v. Conoco, Inc.,* 777 F.2d 243, 246–47 (5th Cir.1985); *Farrington,* 865 S.W.2d at 251.

### Discussion

■■■ Thomann has shown that she engaged in a protected activity when she made an internal complaint in December 2001 and that Lakes Regional took adverse action against her by terminating her employment in February 2002. To establish her prima facie case, Thomann next must show that but for making the complaint, Lakes Regional would not have terminated her employment when it did. *See Sherrod,* 132 F.3d at 1122.

In her response to Lakes Regional's motion for summary judgment, Thomann argues she made the necessary causal connection by showing (1) she had performed her job for over a year without incident, (2) her employment was terminated directly after she made the complaint, (3) she had never been required to lift patients and lifting patients was not part of the job description, (4) her move to the Park Street home was permanent and not temporary, and (5) no reason existed for why she could not continue to work the Park Street home. The trial court granted Lakes Regional's motion for summary judgment without stating its basis, so we will uphold the judgment if the motion could have been granted on any ground. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872–73 (Tex.2000).

■■■ Assuming without deciding that Thomann's evidence raises a prima facie case of retaliation, Lakes Regional offered evidence of a non-discriminatory reason for the termination of Thomann's employment. Lakes Regional's job description required its house parents to have the ability to lift a minimum of 44 pounds, which Thomann was unable to do. Her twenty-pound lifting restriction compromised her ability to perform her duties.[5] Even if Thomann had demonstrated that

---

**5.** When asked to describe how she would assist a patient in an emergency, Thomann did not answer directly. She said there are ways to assist patients other than by having to

she is disabled, Lakes Regional is not required to modify the duties of other employees or eliminate or reallocate essential functions of a position in order to provide accommodation. *See Herrera v. CTS Corp.,* 183 F.Supp.2d 921, 930 (S.D.Tex. 2002).

Thomann offered no evidence that other persons with lifting restrictions held house parent positions at Lakes Regional. Thomann's subjective belief that Lakes Regional discriminated against her because she has a lifting restriction is her unsubstantiated opinion and is not sufficient to raise a fact issue. *See Montgomery,* 809 F.2d at 1062.

Additionally, the Lakes Regional executive director, upon learning of Thomann's meeting with other officers and of their decision to terminate her employment, called her and offered her another position. He confirmed this offer in writing and told her it would be a lateral move with the same rate of pay and benefits. When Thomann did not respond to the offer of another job within the allotted timeframe, Lakes Regional terminated her employment as house parent because she was unable to meet the physical requirements of that job. Lakes Regional refuted Thomann's claim of retaliation by demonstrating that she refused to even interview for the position that accommodated her physical limitations. *See Sherrod,* 132 F.3d at 1123.

Thomann failed to make the necessary showing to establish a genuine issue of material fact in her claim for retaliation. Accordingly, summary judgment on her retaliation claim was proper. As a result, we also conclude the trial court did not consider the summary judgment evidence

in the light most favorable to the movant as opposed to the non-movant and therefore did not err in granting Lakes Regional's motion for summary judgment.

We decide Thomann's first, second and fourth issues against her.

#### CONCLUSION

We do not address whether the trial court erred in overruling Thomann's objections to Lakes Regional's summary judgment evidence because that issue was waived. We conclude Thomann failed to produce more than a scintilla of evidence to support her claims of discrimination and retaliation by Lakes Regional and the trial court did not err by granting Lakes Regional's motion for summary judgment. We affirm the trial court's judgment.

---

lift them and that she would have protected the patient from harm, called the on-duty nurse or 911. Later, she stated she would not lift a patient. Thomann testified she never had to lift more than twenty pounds at the

Park Street home, but admitted that lifting is a central function of the job as house parent when the patient is not ambulatory. Thomann also admitted "there are certain things that, as a parent, that I cannot do."