**AFFIRMED and Opinion Filed September 7, 2023**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-22-00262-CV**
_____

**AMPM ENTERPRISES, INC., POINT TARGET ENTERPRISES, INC., AND KHAWAR ASGHAR, Appellants**

**V.**

**BORDERS & LONG OIL, INC., Appellee**

**On Appeal from the County Court**
**Kaufman County, Texas**
**Trial Court Cause No. 106862-CC**

## MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Kennedy
Opinion by Justice Goldstein

AMPM Enterprises, Inc., Point Target Enterprises, Inc., and Khawar Asghar appeal the trial court's order granting traditional summary judgment in favor of Borders & Long Oil, Inc., on Borders' breach of contract claim against AMPM. In two issues, AMPM argues (1) the trial court erred in failing to sustain its objections to Borders' summary judgment and (2) even without having its objections sustained, Borders failed to sustain its initial summary judgment burden, and AMPM raised a fact issue that precluded summary judgment. We affirm the trial court's judgment.

### BACKGROUND

In January 2021, Borders filed its original petition alleging that, in October 2010, Borders entered into four agreements with AMPM under which AMPM was to purchase gasoline from Borders for resale at AMPM's retail stores. Khawar Asghar signed each of the agreements as AMPM's vice president, and Asghar personally guaranteed each agreement. In June 2017, Point Target Enterprises, Inc., (PTE) requested that Borders supply gasoline to one of its stores at the request of its owner, Asghar. AMPM's and PTE's agreements with Borders created an open account under which Borders delivered gasoline to the stores and AMPM and PTE paid Borders for the gasoline and other expenses.

Borders' petition alleged AMPM failed to pay for goods and services received at its four stores in amounts of $17,227.28, $11,565.97, $21,628.68, and $5,727.86, and PTE failed to pay $16,335.33. Borders conceded that, based on an oral agreement, AMPM and PTE were entitled to a credit of one cent per gallon totaling $30,333.30; thus, the amount of damages Borders claimed was $42,151.82, plus interest and attorney's fees. Borders asserted claims of suit on sworn account, breach of contract, and quantum meruit.[1]

AMPM, PTE, and Asghar filed an amended answer in which they filed a verified plea and specifically denied the sworn account allegations and asserted that,

---

[1] Attached to Borders' petition was the affidavit of Thomas W. Borders, III, Borders' vice president. The affidavit stated that the copies of the agreements between Borders and AMPM and PTE and invoices related to the fuel and services delivered by Borders were true and correct, and the amount owed to Borders by AMPM and PTE was $42,151.82.

although Borders attached invoices to its petition alleging the invoices reflected all just and lawful offsets, payments, and credits, Borders did not itemize those offsets, payments, and credits, and did not verify they had been applied to the invoices attached to the petition. AMPM and PTE also argued that Borders' claims were barred by the statute of limitations and the statute of frauds.

In July 2021, Borders filed a traditional motion for summary judgment[2] asserting, among other things, that it was entitled to summary judgment on its breach of contract claim against AMPM and PTE. As evidence that valid, enforceable contracts existed between Borders and AMPM, the motion referenced copies of those contracts attached to the motion. As to PTE, Borders argued a valid, enforceable contract was formed between Borders and PTE when PTE requested that Borders deliver fuel to its store and Borders complied. Borders cited attached invoices and exhibits as evidence that Borders performed its obligations under the contracts by delivering fuel to each of AMPM and PTE's stores as requested. As evidence that AMPM and PTE breached the contracts, Borders relied on Borders' affidavit showing that AMPM and PTE's accounts remained unpaid despite their obligations to pay for the fuel and Asghar's personal guarantee of such payment.

---

[2] The summary judgment motion sought disposition on all three causes of action; the trial court granted as to the breach of contract claim but denied as to other requested relief and disposed of all parties and all claims.

Finally, Borders asserted that AMPM and PTE's failure to fulfill their payment obligations was the direct cause of Borders' injury.

In August 2021, AMPM and PTE filed their response to Borders' motion for summary judgment. Among other things, AMPM and PTE objected that all of the following documents attached as exhibits to Borders' motion for summary judgment constituted hearsay for which Borders offered no exception: certain invoices from Borders for fuel, a stop payment notice sent to Borders, an invoice from Borders for a returned draft, bills of lading for delivery of fuel, a table of figures representing records reflecting charges incurred by AMPM and PTE, and a table reflecting the amount of a credit agreed upon by the parties.[3] AMPM and PTE also objected to Borders' December 23, 2020 affidavit on the grounds that certain statements in the affidavit were conclusory and not supported by the evidence, and many of the exhibits attached to the affidavit were hearsay for which Borders offered no exception. Attached to the response was Asghar's affidavit stating, among other things, that "Charges for monthly network fees and supplies and other charges other than fuel and incentives reimbursements were not specified or specifically permitted in any contract between [Borders] and [AMPM, PTE, and Asghar]," and Asghar's June 1, 2017 request for fuel on behalf of PTE "did not specify an amount of fuel or a price for fuel."

---

[3] We note without further discussion that the documents attached to the motion were not supported by affidavit, as we have determined that they are not necessary to the disposition of this appeal.

Borders filed a reply to AMPM and PTE's response asserting Borders had presented contracts, invoices, bills of lading, and other documentary evidence to show that AMPM and PTE breached their agreements to pay for the fuel Borders delivered to them, and AMPM and PTE presented "NO evidence at all." Specifically, Borders cited the affidavit of its vice president and custodian of records stating his personal knowledge of the amounts owed, the agreements of the parties, the delivery of the fuel to the stores, the application of offsets, the charge for a stopped check from AMPM, and a chargeback charged to AMPM for AMPM's failure to maintain the proper branding of fuel at one of its stores. Borders reiterated that AMPM and PTE provided no evidence "to controvert either the amounts that were owed or that the fuel was delivered to each of the stores." Borders argued the table showing the amounts owed by AMPM and PTE was a business record admissible as an exception to hearsay under rule of evidence 803(6) and was supported by a business records affidavit in compliance with rule of evidence 902(10). As to AMPM and PTE's attempt to avoid Borders' breach of contract claims on the basis that "certain prices or fees were not included on the face of the contract," Borders argued that the failure to specify a price does not leave a contract so incomplete that it cannot be enforced when the contracting parties have done everything else necessary to make a binding agreement, citing *Fischer v. CTMI, LLC*, 479 S.W.3d 231, 240 (Tex. 2016).

In January 2022, the trial court entered an order granting Borders' traditional motion for summary judgment on Borders' breach of contract claim against AMPM, PTE, and Asghar. The judgment awarded Borders $42,151.82 in damages and $15,579.57 in attorney's fees. AMPM, PTE, and Asghar filed a request for a ruling on their objections to Borders' summary judgment evidence and a motion for new trial. In April 2022, the trial court entered separate orders denying AMPM, PTE, and Asghar's motion for new trial and overruling all of their objections to Borders' summary judgment evidence. This appeal followed.

**DISCUSSION**

In their first issue, AMPM, PTE, and Asghar complain the trial court erred in failing to sustain their objections to Borders' summary judgment evidence. In their second issue, AMPM, PTE, and Asghar argue that, even if their objections were not sustained, Borders failed to establish its initial burden and appellants raised genuine issues of material fact which precluded summary judgment. Because of the interrelated nature of these two issues, we address them together.

**A. Standard of Review**

The movant for traditional summary judgment has the burden of proving that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). When, as here, the plaintiff moves for summary judgment, the plaintiff must conclusively prove all elements of its cause of action as

–6–

a matter of law. TEX. R. CIV. P. 166a(c); *Kyle v. Countrywide Home Loans, Inc.*, 232 S.W.3d 355, 358 (Tex. App.—Dallas 2007, pet. denied). A matter is conclusively proven if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982). Once the plaintiff conclusively proves its right to summary judgment as a matter of law, the burden then shifts to the defendant as non-movant to present evidence that raises a genuine issue of material fact, thereby precluding summary judgment. *See Pace v. Pace*, 160 S.W.3d 706, 714 (Tex. App.—Dallas 2005, pet. denied) (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979)). We review a grant of summary judgment de novo. *Thomann v. Lakes Reg'l MHMR Ctr.*, 162 S.W.3d 788, 794–95 (Tex. App.—Dallas 2005, no pet.). In reviewing the grant of a summary judgment, we take as true all evidence favorable to the nonmovant and resolve in the nonmovant's favor all reasonable inferences, including any doubts. *Nixon*, 690 S.W.2d at 548–49.

Affidavits used to support a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P. 166a(f). We review a trial court's rulings concerning the admission or exclusion of summary judgment evidence for an abuse of discretion. *See Fairfield Fin. Group, Inc. v. Synnott*, 300 S.W.3d 316, 319 (Tex.

App.—Austin 2009, no pet.). An abuse of discretion occurs only when the trial court makes a decision without reference to any guiding rules or principles or its decision is arbitrary or unreasonable. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

## B. Issues

### 1. Breach of Contract

The elements of a cause of action for breach of a contract are: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of that breach.[4] *McGraw v. Brown Realty Co.*, 195 S.W.3d 271, 276 (Tex. App.—Dallas 2006, no pet.). A contract has been breached when a party fails to perform an act that it has expressly or impliedly promised to perform. *Id.*

The proponent of hearsay bears the burden of showing that the testimony fits within an exception to the general rule prohibiting the admission of hearsay evidence. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004); *see also* TEX. R. EVID. 802. The Texas Rules of Evidence provide the following hearsay exception for business records:

> A . . . record . . . made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice

---

[4] We note that appellants do not dispute the existence of the contracts, performance by delivery and receipt of fuel, or the failure to pay for fuel—elements one, two and three. As a practical matter, all that is at issue are damages.

> of that business activity to make the . . . record . . . , all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstance of preparation indicate lack of trustworthiness.

TEX. R. EVID. 803(6). The predicate for admission of business records may be established "by affidavit that complies with Rule 902(10)." TEX. R. EVID. 803(6). Rule 902(10) provides that records "shall be admissible in evidence in any court in this state upon the affidavit of the person who would otherwise provide the prerequisites of Rule 803(6) or (7)." TEX. R. EVID. 902(10)(a). Rule 902(10) includes a sample form of an affidavit that complies with the rule and states that "an affidavit which substantially complies with the provisions of this rule shall suffice[.]" TEX. R. EVID. 902(10)(b).

Here, Borders' December 23, 2020 affidavit established that he was the vice president of Borders and was responsible for overseeing the maintenance of Borders' books and records of sales and accounts and was the custodian of such records. The affidavit stated that the table showing a balance of $42,151.82 owed by AMPM and PTE was "a true and correct copy of Borders' records reflecting charges incurred by AMPM and PTE for gasoline delivered to AMPM and PTE's stores or related fees or services incurred pursuant to the agreement of the parties," and the table was "created in the ordinary course of business and reflects a systematic record of the amounts owed by AMPM and PTE to Borders." We conclude Borders' affidavit was sufficient to establish that the table showing the amount owed by AMPM and

PTE qualified as a business record and was admissible under rules 803(6) and 902(10). *See* Tex. R. Evid. 803(6), 902(10). Therefore, the trial court did not abuse its discretion in admitting as summary judgment evidence the table showing a balance of $42,151.82 owed by AMPM and PTE. *See Synnott*, 300 S.W.3d at 319.

AMPM, PTE, and Asghar do not dispute the existence of their contracts with Borders, their receipt of fuel from Borders, or their failure to pay for fuel; rather, they argue there was no evidence that, under the terms of the contracts with AMPM, Borders could charge "monthly fees, network fees, and mystery shoppers fees." Thus, they argue, because Asghar's guarantees related only to the terms of the contracts, there was no evidence Asghar guaranteed any of these amounts. As to PTE, they assert there was "no evidence of any agreed upon price or volume of gasoline nor any evidence that the price charged for the fuel was reasonable and consistent with the request of Point Target."

When the parties "have done everything else necessary to make a binding agreement . . . , their failure to specify the price does not leave the contract so incomplete that it cannot be enforced." *Fischer*, 479 S.W.3d at 240 (quoting *Bendalin v. Delgado*, 406 S.W.2d 897, 900 (Tex. 1966)). "In such a case it will be presumed that a reasonable price was intended." *Id.* (quoting *Bendalin*, 406 S.W.2d at 900). Moreover, we are guided by the principle that "[p]art performance under an agreement may remove uncertainty and establish that a contract enforceable as a

bargain has been formed." *Id.* (quoting RESTATEMENT (SECOND) OF CONTRACTS § 34(2)).

It is not disputed that AMPM and Asghar entered into contracts with Borders in October 2010 to provide fuel at four locations, and Borders continued to provide fuel, and AMPM continued to pay for it, until some time in 2017. Borders and PTE commenced an oral relationship involving requests and delivery of fuel in 2017. During that transactional history, AMPM, Asghar, and PTE did not complain about fees included in the price of fuel or challenge the validity of their contracts with Borders. Under the facts and circumstances of this case, we conclude neither the absence of a price specified in the underlying contracts nor the absence of provisions for the payment of "monthly fees, network fees, and mystery shoppers fees" raised a fact issue as to the amounts owed to Borders under the contracts. *See id.*; *Pace*, 160 S.W.3d at 714. AMPM, Asghar, and PTE point to no evidence that fees were *not* to be included in the price charged for fuel, and the course of dealings of the parties over nearly seven years shows that the fees and the terms of the contracts were not an issue until AMPM, Asghar, and PTE stopped paying for the fuel Borders delivered.

AMPM, Asghar, and PTE, as they did in the trial court, raise numerous challenges to individual exhibits that give background context to the course of dealings between the parties and which were attached to Borders' summary judgment motion. However, we need not address the admissibility of such

supporting exhibits due to our conclusion that the table was properly considered as a business record and provided sufficient evidence in support of summary judgment. In light of the contracts between the parties, the undisputed history of performance, delivery, and receipt of fuel and failure to pay, and having determined that the table showing a balance of $42,151.82 owed by AMPM and PTE was proper summary judgment evidence, we conclude the trial court did not err in granting traditional summary judgment in favor of Borders on Borders' breach of contract claim. *See* TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548.

### 2. Attorneys' Fees

AMPM, Asghar, and PTE's challenge the award of attorney's fees, asserting the statements in the affidavit of Borders' attorney Andrew D. Lewis were conclusory and should be excluded from consideration. Specifically, they object to Lewis' statements that his services and charges set out in an exhibit were "necessary to the representation of Plaintiff," "reasonable charges in North Texas at the time and place where the services were provided," and "reasonable and customary for attorneys practicing in North Texas during the time that the work was done." AMPM, Asghar, and PTE also object to Lewis' opinion that it would cost Borders another $2500 in attorney fees and expenses to attend the hearing on its motion for summary judgment and draft any necessary replies or responses.

In the alternative, AMPM, Asghar, and PTE assert that, even if their objections to Lewis' affidavit are not sustained on appeal, a genuine issue of material

fact exists as to the amount of reasonable and necessary attorney's fees. AMPM, Asghar, and PTE complain that Borders failed to segregate its attorney's fees between the "completely separate" causes of action against AMPM and Asghar on the one hand and PTE on the other. They aver that the affidavit of their attorney, Brian E. Richardson, created a fact issue whether Borders' attorney's fees were reasonable and necessary. Specifically, Richardson's affidavit made a fee rate comparison and asserted that Borders' claimed attorney's fees and costs were not reasonable because Borders' two attorneys charged $300 and $400 respectively per hour, and Richardson charged the reasonable amount of $220 per hour. Richardson's affidavit further stated that $2500 in anticipated attorney's fees was unreasonable and "completely speculative." As a result, AMPM, Asghar, and PTE argue, fact issues existed precluding the attorney's fees awarded in the judgment, and reversal and remand on the issue of attorney's fees is required.

The record shows Lewis testified in his affidavit as to his level of experience, his personal knowledge of the facts stated therein, the type of work he and others performed on the case, and the amount of "reasonable" and "necessary" fees based upon his hourly rate and the time required as reflected in attached copies of billing statements and a report showing Borders' payments. We cannot agree with AMPM, Asghar, and PTE that Lewis' affidavit is conclusory. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 503–05 (Tex. 2019); *Ellis v. Renaissance on Turtle Creek Condo. Ass'n, Inc.*, 426 S.W.3d 843, 859 (Tex. App.—

–13–

Dallas 2014, pet. denied); *Dodd v. Savino*, No. 14–12–00555–CV, 2014 WL 242881, at *13 (Tex. App.—Houston [14th Dist.] Jan. 16, 2014, no pet.) (rejecting argument that attorney's affidavit testimony was conclusory where attorney attested she is duly licensed attorney with personal knowledge of work performed and indicated type of work performed).

AMPM, Asghar, and PTE cite two cases, *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006), and *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017), for the proposition that a claimant must segregate legal fees accrued for those claims for which attorney's fees are recoverable from those that are not. *See Chapa*, 212 S.W.3d at 314; *Kinsel*, 526 S.W.3d at 427 (citing *Chapa*, 212 S.W.3d at 314). In *Chapa*, the court remanded the attorney's fee issue for a new trial because appellant did not separate unrecoverable fees associated with a fraud claim from fees recoverable on a breach of contract claim. *Chapa*, 212 S.W.3d at 310; *see Kinsel*, 526 S.W.3d at 428 (remanding to trial court for reconsideration of attorney's fees award). Nevertheless, the *Chapa* court noted the following:

> A recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their "prosecution or defense entails proof or denial of essentially the same facts." *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 624–25 (Tex. App.—Dallas 1987, writ denied). Therefore, when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are "intertwined to the point of being inseparable," the party suing for attorney's fees may recover the entire amount covering all claims. *Gill Sav. Ass'n v. Chair King, Inc.*, 783 S.W.2d 674, 680 (Tex. App.—Houston [14th Dist.] 1989), modified,

–14–

797 S.W.2d 31 (Tex. 1990) (remanded to the trial court for reexamination of attorney's fee award).

*Chapa*, 212 S.W.3d at 311.

AMPM, Asghar, and PTE cite no authority to support their characterization of Borders' claims of breach of contract, sworn account and quantum meruit as "completely separate." On the contrary, Borders asserted essentially identical claims, based upon the same set of facts and circumstances against all three of these related entities. The summary judgment was only for Borders' breach of contract claims against AMPM, Asghar, and PTE, and attorney's fees are recoverable on a claim of breach of contract. *See* TEX. CIV. PRAC. & REM. CODE § 38.001(b)(8). Thus, the failure to segregate attorney's fees in this case did not create a fact issue. See *Chapa*, 212 S.W.3d at 311.

The court may determine the amount of reasonable and necessary attorney's fees on a motion for summary judgment where the evidence is clear, direct, positive, uncontradicted, and free from inaccuracies and "circumstances tending to cause suspicion." See TEX.R. CIV. P. 166a(c); *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (per curiam). "[T]he affidavit of the attorney representing a claimant constitutes expert testimony that will support an award of attorney's fees in a summary judgment proceeding." *Ellis*, 426 S.W.3d at 857 (quoting *Haden v. David J. Sacks, P.C.*, 332 S.W.3d 503, 513 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

If an attorney's affidavit regarding fees is properly controverted by an opposing attorney, a fact issue is raised on reasonableness and summary judgment is precluded. *Cammack the Cook, L.L.C. v. Eastburn*, 296 S.W.3d 884, 894 (Tex. App.—Texarkana 2009, pet. denied). To constitute a proper controverting summary judgment affidavit on the issue of attorney's fees, the affidavit must be made by an attorney and on personal knowledge, set forth facts which would be admissible in evidence, and show the affiant's competence. *Id.*; *Querner Truck Lines, Inc. v. Alta Verde Indus., Inc.*, 747 S.W.2d 464, 468 (Tex. App.—San Antonio 1988, no writ).

We have already concluded that Lewis' affidavit was competent summary judgment evidence supported by detailed billing records showing billing statements and payments. We conclude Richardson's statement that Borders' claimed attorney's fees and costs were not reasonable due to a difference in hourly rates charged by different attorneys, with no additional factual comparatives or challenge based upon knowledge, skill or experience did not constitute sufficient controverting summary judgment evidence on the issue of attorney's fees. *See Eastburn*, 296 S.W.3d at 894.[5] We overrule AMPM, Asghar, and PTE's first and second issues.

---

[5] The same holds true for Richardson's conclusory statement that $2500 in anticipated attorney's fees was unreasonable and "completely speculative."

–16–

We affirm the trial court's judgment.

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE

220262F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

AMPM ENTERPRISES, INC.,
POINT TARGET ENTERPRISES,
INC., AND KHAWAR ASGHAR,
Appellants

No. 05-22-00262-CV          V.

BORDERS & LONG OIL, INC.,
Appellee

On Appeal from the County Court,
Kaufman County, Texas
Trial Court Cause No. 106862-CC.
Opinion delivered by Justice
Goldstein. Justices Carlyle and
Kennedy participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee BORDERS & LONG OIL, INC. recover its costs of this appeal from appellants AMPM ENTERPRISES, INC., POINT TARGET ENTERPRISES, INC., AND KHAWAR ASGHAR.

Judgment entered September 7, 2023.

–18–